NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CONSUELO V., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.G., A.G., I.M., *Appellees*.

No. 1 CA-JV 17-0226
FILED 11-28-2017

Appeal from the Superior Court in Maricopa County
No. JD528703
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Chief Judge Samuel A. Thumma and Judge Diane M. Johnsen joined.

_____

**B E E N E**, Judge:

¶1        Consuelo V. ("Mother") appeals the superior court's order terminating her parental rights to her three children.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In April 2015, Mother was involved in a domestic dispute with her boyfriend involving the firing of a gun near one of her children. That same month, the Department of Child Safety ("DCS") filed a petition alleging the children were dependent as to Mother because she was unable to parent due to substance abuse, neglect, and domestic violence. DCS took custody of the children and placed them in foster care.  After a contested dependency adjudication, the court found the children dependent as to Mother in March 2016 and adopted a family reunification case plan.

¶3        DCS required Mother to live a sober lifestyle free from illegal drugs.  In order to assist her with this goal, DCS provided Mother with various services, including urinalysis testing, Terros substance abuse services, transportation, parenting-skills classes, and domestic violence and individual counseling.  Mother completed domestic violence counseling, but did not successfully complete individual counseling.  Mother finished her parent-aide services, but she frequently missed or arrived late for visits, acted erratically, struggled to comprehend her parental duties, and frequently upset the children during her visits.

¶4        Throughout the dependency, Mother often missed urinalysis testing, submitted diluted samples, and tested positive for amphetamine, methamphetamine, and alcohol.  Mother, however, denied that she had a substance abuse problem.

¶5        In August 2016, police responded to a report from Mother alleging that she had been shot.  During this incident, police determined that Mother had not been shot but observed her acting erratically.  As a

result, Mother was admitted to the Urgent Psychiatric Care ("UPC") for two days. While there, Mother tested positive for methamphetamine, and admitted to using illegal substances multiple times per day and that she was unemployed and homeless. A psychological assessment found that Mother had an "[i]mpaired ability to make reasonable decisions" and had "[d]ifficulty acknowledging [the] presence of substance abuse problems[.]"

¶6 Following her UPC stay, Mother continued her pattern of non-compliance with urinalysis testing. Moreover, Mother denied that she had a substance abuse problem and stated that she would not benefit from additional substance abuse treatment. While Mother completed a standard outpatient program through Terros, she refused to participate in recovery maintenance.

¶7 Immediately following her UPC stay, the superior court granted DCS's request for a change of case plan to severance and adoption, and DCS moved to terminate Mother's parental rights to the children based on substance abuse and 15 months out-of-home placement. *See* Ariz. Rev. Stat. ("A.R.S.") § 8–533(B)(3), (8)(c).

¶8 In May 2017, after a contested termination hearing at which Mother testified, the superior court terminated Mother's parental rights on both grounds alleged and found that severance would be in the children's best interests. We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8–235(A), 12–120.21(A)(1), and –2101(A)(1).

## DISCUSSION

### I. Standard of Review

¶9 Custody of one's children is a fundamental, but not absolute, right. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). The superior court may terminate a parent's rights upon clear and convincing evidence of one of the statutory grounds in A.R.S. § 8–533(B) and upon finding by a preponderance of the evidence that termination is in the best interests of the child. *Id.* at 248–49, ¶ 12.

¶10 We review a termination order for an abuse of discretion and will affirm the order "unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998). The court must consider those circumstances existing at the time of the termination hearing. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

## II.    Substance Abuse

¶11        Mother argues that the superior court erred in finding she was unable to discharge her parental responsibilities due to substance abuse. The superior court may terminate parental rights if (1) the parent has a history of chronic substance abuse, (2) the parent is unable to discharge parental responsibilities due to chronic substance abuse, and (3) reasonable grounds exist to believe that the abuse will continue for a prolonged and indeterminate period. A.R.S. § 8–533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010).

¶12        Termination under A.R.S. § 8–533(B)(3) "does not require that the parent be found unable to discharge any parental responsibilities . . . but rather establish[es] a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case before determining the parent's ability to discharge his or her parental responsibilities." *Maricopa Cty. Juvenile Action No. JS–5894*, 145 Ariz. 405, 408–09 (App. 1985). The court must consider the "availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8–533(D).

¶13        The record provides ample support for the superior court's finding that Mother's chronic substance abuse rendered her unable to discharge her parental responsibilities. First, Mother has a history of chronic substance abuse. Mother began using alcohol when she was 14 years old and, throughout the dependency, Mother tested positive for alcohol, amphetamine, and methamphetamine and admitted to using these substances multiple times a day.

¶14        Second, the record shows that Mother could not discharge her parental responsibilities due to her substance abuse. During her UPC stay, Mother tested positive for methamphetamine, admitted to using illegal drugs multiple times each day, and admitted that she was unemployed and homeless. At the time of the termination hearing, Mother was incarcerated after pleading guilty to armed robbery which occurred two months prior to her UPC stay. These facts support the court's finding that Mother's chronic drug abuse rendered her unable to discharge her parental responsibilities.

¶15        Reasonable evidence also supports the court's findings that Mother's substance abuse will continue for a prolonged and indeterminate period. A psychological assessment found that Mother had an "[i]mpaired ability to make reasonable decisions" or "acknowledg[e the] presence of substance abuse problems." Throughout the pendency of the case, Mother

4

consistently denied that she had a substance abuse problem and testified that she would not benefit from additional substance abuse treatment. The DCS case manager testified that Mother had not rectified her substance abuse, lacked insight about why the case had commenced, and failed to remedy the circumstances causing the children to be placed in foster care.

¶16　　　　Although Mother testified that she had been clean during her incarceration, had been taking substance abuse classes, and would not engage in the use of drugs in the future, her repeated positive drug test results, missed tests, and diluted tests over the 14-month-period after the children were found dependent showed that she could not "sustain[] sobriety in a noncustodial setting." *See Raymond F.*, 224 Ariz. at 379, ¶ 29. Considering the circumstances at the time of the termination hearing, the evidence fully supports the court's determination that (1) Mother had "not demonstrated the ability to remain sober outside a controlled environment," (2) "Mother's testimony reflected her belief that she does not have a serious substance abuse problem," and (3) Mother "is prone to relapse once she is released from jail and is no longer in a controlled environment."

¶17　　　　The record further shows that DCS made diligent efforts to provide Mother with reunification services, but Mother failed to make the necessary sobriety changes to permit reunification. Although Mother completed domestic violence counseling and parent-aide services, she did not successfully complete individual counseling, testified that she did not "learn anything [she did not] already kn[o]w" from her parenting classes, and exhibited erratic and belligerent behavior with several case aides. The court reasonably found that DCS had "attempted to provide Mother with services, including testing and substance abuse treatment[,]" to no avail.

¶18　　　　Accordingly, the superior court did not abuse its discretion in terminating Mother's parental rights under A.R.S. § 8–533(B)(3). Therefore, we need not address Mother's argument that the court erred in terminating her parental rights based on 15 months out-of-home placement under A.R.S. § 8-533(B)(8)(c). *See Michael J.*, 196 Ariz. at 251, ¶ 27 (if appellate court affirms one statutory basis, it need not address other statutory bases for termination).

### III.　　Best Interests

¶19　　　　Mother contends the superior court erred by finding by a preponderance of the evidence that severance was in the children's best interests. "Whether severance is in the child's best interests is a question of

fact for the juvenile court to determine," and we draw all reasonable inferences in favor of the superior court's findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002). The best interests consideration requires a court to assess "how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (citation omitted). The best interests requirement may be met if the child is adoptable or the existing placement is meeting the child's needs. *Id.*

**¶20** The superior court did not abuse its discretion in finding that severance would be in the best interests of the children because it would further a plan of adoption, which would provide the children with safety, stability, and permanency. The evidence also supported the court's finding that the children would suffer a detriment if Mother's parental rights were not terminated. Accordingly, the court did not err in finding that terminating Mother's parental rights was in the children's best interests.

## CONCLUSION

**¶21** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights to her three children.

