NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRITTNIE C., PROCORO R., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.C., E.C., *Appellees*.

No. 1 CA-JV 17-0117
FILED 12-5-2017

Appeal from the Superior Court in Maricopa County
No. JD527512
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By David C. Lieb
*Counsel for Appellant Brittnie C.*

Justine R. Jimmie, Attorney at Law, Phoenix
By Justine R. Jimmie
*Counsel for Appellant Procoro R.*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Randall M. Howe and Judge Kent E. Cattani joined.

_____

**B E E N E,** Judge:

**¶1**        Brittnie C. ("Mother") and Procoro R. ("Father") (collectively "Parents") challenge the superior court's order terminating their parental rights to their two children.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        The Department of Child Safety ("DCS") first provided Parents with family preservation services in 2010 and then provided services again in 2014, when they removed the children from Parents due to domestic violence issues.

**¶3**        DCS filed a dependency petition in March 2014 alleging neglect, mental health issues, and domestic violence against Mother and neglect and domestic violence against Father.  DCS referred Mother for a psychological evaluation, domestic violence counseling, and substance abuse testing.  In July 2014, the court found the children to be dependent as to Parents, and DCS continued to provide reunification services.

**¶4**        By February 2015, Mother was beginning dialectical behavioral therapy ("DBT"), receiving counseling with an emphasis on domestic violence, and she and Father were participating in family and couples counseling through their local church.  A month later, the superior court ordered that the children be returned to the physical custody of Parents.

**¶5**        At an August 2015 review hearing, the superior court ordered an updated psychological evaluation of Mother to be completed by a different provider.  Two months later, DCS moved to dismiss the case based on a psychological report stating that Mother could benefit from counseling but that she would be more amenable to receiving the service on her own and not through DCS.  The children's guardian *ad litem* objected, and the court denied DCS's motion to dismiss the dependency case.

2

¶6          In January 2016, after two incidents in which the Mesa Police Department were called, the superior court granted DCS's motion to remove the children from Parents' physical custody based on concern for the safety, health, and emotional well-being of the children.  The following month, the court ordered Parents to participate in a second parent aide referral.

¶7          After the case plan was changed to severance and adoption, DCS filed a petition to terminate the parent-child relationship on the ground of out-of-home placement for a cumulative period of fifteen months or longer.  *See* Arizona Revised Statutes ("A.R.S.") Section 8-533(B)(8)(c). The court held a contested four-day termination trial in February 2017 and subsequently terminated Parents' parental rights.

¶8          The superior court found that DCS made reasonable, diligent efforts to provide Parents with proper reunification services.  The court further found that despite all the services DCS provided, Parents had been unable to remedy the circumstances that caused the children to be in an out-of-home placement and that there was a substantial likelihood that they would not be capable of exercising proper and effective parental care and control in the near future.  The court determined that DCS proved by a preponderance of the evidence that termination was in the children's best interests.  The children were adoptable, and the maternal grandparents, with whom the children were placed, were willing to adopt.

¶9          Father and Mother each filed a timely notice of appeal.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶10          The fundamental right to parent one's child is not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  The superior court may terminate parental rights if it finds, "by clear and convincing evidence, at least one of the statutory grounds set out in section 8–533,"and by a preponderance of the evidence that termination is in the best interests of the child.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶ 12 (2000). The court must consider those circumstances existing at the time of the termination hearing.  *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).  As the trier of fact, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).  Thus, we review an order terminating

parental rights for an abuse of discretion and will not reverse unless "there is no reasonable evidence to support" the order. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I.  Diligent Efforts to Reunify – Mother

**¶11**        Mother argues that the evidence was insufficient to support the court's finding that DCS made a diligent effort to provide her appropriate reunification services because it did not provide a referral for psychodynamic psychotherapy, and the referral for couples counseling was untimely and therefore could not be successfully completed before the termination hearing.  Mother's argument suggests she believes these services might have revealed a change in her ability to parent.

**¶12**        To meet its burden of proof under A.R.S. § 8–533(B)(8)(c), DCS was required to prove that (1) the children have been in an out-of-home placement for at least fifteen months, (2) it has "made a diligent effort to provide appropriate reunification services," (3) "the parent has been unable to remedy the circumstances" causing the out-of-home placement, and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."

**¶13**        Mother does not challenge the existence of the statutory ground for termination or that severance was in the children's best interests.  She contends only that DCS failed to make reasonable efforts to provide her with reunification services.

**¶14**        DCS makes a diligent effort to provide appropriate reunification services when it gives the parent "the time and opportunity to participate in programs designed to help her to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (citation omitted).  "[DCS] is not required, however, to provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.* at ¶ 15 (citation omitted).  DCS also need not duplicate a service the parent has already received, at least when such services would clearly prove futile.  *See Pima Cty. Severance Action No. S–2397*, 161 Ariz. 574, 577 (App. 1989); *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (recognizing the state must only "undertake measures with a reasonable prospect of success").  Further, DCS need not undertake rehabilitative measures indefinitely. *See Maricopa Cty. Juvenile Action No. JS–501568*, 177 Ariz. 571, 577 (App. 1994).

**¶15**        Mother first argues that DCS failed to refer her for psychodynamic psychotherapy.  Over the course of nearly three years, DCS

provided Mother with two parent aide referrals, three psychological evaluations, five psychiatric evaluations, individual and couples counseling, therapeutic and supervised visitation, family preservation team services, and two family reunification teams.

¶16            Mother participated in her first psychological evaluation in June 2014. The psychologist expressed concerns regarding Mother's mental health and opined that without psychological or psychiatric treatment, Mother would not be able to minimally parent the children. Further, the psychologist opined that Mother needed counseling and medication, and that the children would be at risk of harm while in Mother's care. Mother refused to consider prescribed psychiatric medications and refused counseling in October 2014.

¶17            Although the court returned the children to Parents in March 2015 despite Mother's failure to complete DBT therapy, DCS remained concerned about Mother's mental health. In October 2015, Mother completed a second psychological evaluation, and the psychologist opined that if Mother did not successfully engage in counseling there would be significant safety concerns regarding the children in the home. The psychologist further opined that Mother would be more likely to participate in DBT or some other form of therapy on her own without DCS's involvement. When DCS removed the children in December 2015, Mother did self-refer for counseling but not for psychodynamic psychotherapy.

¶18            At the termination hearing, the case manager testified that the psychologist's notes indicated "psychodynamic psychotherapy may have a better chance than DBT." DCS did not consider the instruction for a psychodynamic psychotherapy referral as a recommendation but as a suggestion, and DCS did not, in fact, have a referral for such therapy. Mother could have self-referred for psychodynamic psychotherapy service, and given Mother's failure to successfully complete DBT and her preference for self-referred services, the case manager felt that minimal intervention from DCS was optimal.

¶19            In January 2017, a third psychologist evaluated Mother and reviewed her multiple counseling and DBT services. The psychologist testified "the cadre of services provided were spot on. The whole range of services, I thought, were spot on. They were really good services." This evidence is sufficient from which to conclude that DCS provided appropriate service referrals and recommendations for Mother to self-refer. And even though DCS must make reasonable efforts to provide

reunification services, it is not required to provide every conceivable service. *See Christina G.*, 227 Ariz. at 235, ¶ 15.

**¶20** Mother also argues DCS failed to provide couples counseling in a timeframe sufficient to allow for successful completion. The record shows that Parents did receive couples counseling through the family preservation team and reunification team, and they maintained that there were no domestic violence issues in their relationship. At the termination hearing, Mother denied she and Father experienced any issues that they needed to address. The DCS supervisor testified she discussed couples counseling with Parents, but that Father stated when they participated in the past all Mother did was yell at the therapist, and Parents informed the DCS supervisor the service did not work for them.

**¶21** Mother received a vast number of services and repeated opportunities to successfully complete multiple services but failed to fully participate and engage in the services. Her history of non-compliance and lack of progress with services does not support her assertion that a referral for psychodynamic psychotherapy and couples therapy would have implemented the change necessary to allow her to safely and appropriately parent the children. Thus, on this record, the superior court did not abuse its discretion by finding that DCS made reasonable efforts to provide Mother with reunification services.

## II. Best Interests – Father

**¶22** Father argues the court's best interests finding was clearly erroneous and contrary to the substantial evidence in the record because "there exists a relationship between Father and [the] children" and Father wants to maintain his parental relationship.

**¶23** To prove that severance is in the child's best interests, DCS must show that the child would either benefit from severance or be harmed by a continuation of the parental relationship. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011). It is sufficient that DCS show severance would free a child for adoption, and that the child would benefit from finding an adoptive placement. *Maricopa Cty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Additionally, DCS can establish that termination is in a child's best interests by presenting evidence showing that an existing placement is meeting the needs of the child. *Mary Lou C.*, 207 Ariz. at 50, ¶ 19.

**¶24** The superior court found that termination was in the children's best interests because Parents' relationship was unstable and the

children have the right to a permanent and stable home that meets all their needs. The court further found Mother's continued emotional deregulation and refusal of treatment together with Parents' unaddressed relationship issues put the children at significant risk of emotional and/or physical harm.

¶25        At the time of termination, the children had lived with maternal grandparents for three years. Although they visited with Parents, Father distanced himself or removed himself from visits when Mother was emotionally inappropriate. In February 2016, Father's psychologist noted that if the children were placed in his care, they "may be at risk of being exposed to domestic violence issues as [he] has not demonstrated an ability to consistently avoid exposing his children to domestic violence between him and his wife through the current DCS case." The social worker testified that Parents' marriage was unstable and that while therapeutic visits were closed, it was because the referral ended, not because the goals were met. Parents failed to meet the goal of ensuring the children's emotional safety.

¶26        The court found that the children were adoptable and that the maternal grandparents were the least restrictive placement. On this record, sufficient evidence supports the court's finding that termination is in the children's best interests.

## CONCLUSION

¶27        Based on the foregoing, we affirm the superior court's order terminating Parents' parental rights to their two children.

