IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOELLE M., *Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, L.M., *Appellees*.

No. 1 CA-JV 18-0079
FILED 11-6-2018

Appeal from the Superior Court in Mohave County
No. S8015JD201700080
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Phoenix
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

Mohave County Attorney's Office, Kingman
By Bobbie Shin
*Counsel for Appellee L.M.*

## OPINION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Peter B. Swann joined.

**W E I N Z W E I G**, Judge:

¶1 Joelle M. ("Mother") appeals from the superior court's order finding her daughter, L.M., dependent based upon medical neglect. Mother's argument against the finding of neglect fails to account for L.M.'s unique needs. We hold the superior court must consider a child's unique needs in a dependency action to protect the child's best interest and meaningfully assess the parent's willingness and ability to supply proper and effective parental care and control. Because the record supports the dependency finding, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 This is a child dependency action. Mother and Lucas M. ("Father") are the biological parents of L.M., who was born healthy in Nevada in 2011. At two months old, L.M. was rushed to the hospital with life-threatening brain injuries. Father was later convicted in Nevada of abusing his daughter and sentenced to prison.[1] L.M. suffered severe and irreversible brain damage. She now endures dozens of chronic and debilitating disorders, including encephalopathy, spastic quadriplegic cerebral palsy and epilepsy. She requires a wheel chair and is legally blind; cannot feed herself or communicate, except for a few nonverbal cues; bears a perpetual high risk for seizures, vomiting, choking and aspiration; and gains nourishment from a continuous 24-hour feed delivered from a battery-powered feeding machine. L.M. needs full-time care and attention for her very survival.

¶3 Mother and L.M. later moved to Arizona. The Arizona Department of Child Safety ("DCS") first learned about L.M. in July 2017, when she was a part-time student in a special education program for

---

[1] Father was released from prison in September 2016. The superior court found L.M. dependent as to Father. Father was not living with Mother or L.M. during the events giving rise to this dependency and his whereabouts are unknown.

"[m]edically fragile children." The school year had just begun and DCS received anonymous complaints to its hotline that Mother had neglected to provide the school with an operational feeding machine, thus preventing school officials from providing L.M. with nourishment, hydration and medication. School officials had trouble reaching Mother and it took several hours for her to deliver a feeding machine or power cord, even though she lived only minutes from the school. And when Mother did arrive, DCS records report that she was "usually . . . out of it" and had trouble "keeping her eyes open." Mother later conceded she used methamphetamine "on occasion" while L.M. was at school.

¶4         The record indicates that Mother was indifferent and uncaring at times. School officials alerted Mother that L.M. was vomiting uncontrollably and directed her to retrieve her daughter. Mother did not arrive for more than two hours after receiving the news. L.M. then returned to school after a brief one-week absence with a large red sore on her neck. The baseball-sized blotch was shiny, moist and had a strong, foul odor. School officials contacted Mother, who did not respond for hours. Mother later downplayed the blotch, even questioning whether someone had altered pictures of the sore to make it look worse.

¶5         The school nurse also expressed concern about Mother's care and maintenance of L.M.'s medical equipment. Mother did not provide clean and sterile supplies for the feeding machine, forcing the nurse to reuse the same tubes and bags, increasing the risk of infection.

¶6         The matter reached a breaking point in September 2017. Mother again sent L.M. to school with no feeding machine and later delivered a feeding machine that broke down, leaving L.M. without nourishment for hours. School and DCS officials unsuccessfully tried to reach Mother. DCS took L.M. into care.

¶7         DCS filed a dependency petition based on Mother's failure to provide proper and effective parental care and control, A.R.S. § 8-201(15)(a)(i), but continued its efforts to return L.M. to Mother's care. Mother ultimately agreed to a safety plan, which provided that L.M. would live with her maternal grandmother and Mother until Mother passed 12 consecutive drug tests for methamphetamine "without any missed or diluted samples in a month" and enrolled in counseling services to cope with stress. Mother breached the safety plan agreement. She failed and missed several drug tests for methamphetamine.

**¶8**        The court held a dependency hearing in January 2018, where it heard testimony from Mother, the DCS investigator and the DCS case manager. It also considered testimony from an earlier Rule 51 hearing. The court found L.M. dependent because she had no parent willing or able to exercise the proper and effective parental care and control she required. A.R.S. § 8-201(15)(a)(i). Mother appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶9**        We review the superior court's dependency order for an abuse of discretion, *Shella H. v. Ariz. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016), and accept its findings of fact unless clearly erroneous, *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 233, ¶ 10 (App. 2007). This court affirms a finding of dependency unless it is supported by no reasonable evidence. *Shella H.*, 239 Ariz. at 50, ¶ 13.

**¶10**        A dependent child includes one "[i]n need of proper and effective parental care and control and who has no parent or guardian willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i). Our primary concern is the child's best interest. *Ariz. Dep't of Econ. Sec. v. Superior Court*, 178 Ariz. 236, 239 (App. 1994).

**¶11**        Mother argues the evidence presented at the dependency hearing was insufficient to prove by a preponderance of the evidence that L.M. was dependent. *See* A.R.S. § 8-844(C)(1)(a)(iii) (requiring court to find child dependent if the allegations of the dependency petition are true by a preponderance of the evidence). She asserts that she "has brought the child to the hospital as well as medical appointments on numerous occasions."

**¶12**        We reject Mother's argument to the extent she asserts the superior court should examine and decide whether a child is dependent based on the needs of typical children and the abilities of typical parents. The superior court does not use a general, unitary standard of equal application to all children and parents in determining whether a particular child is dependent. The court must instead consider the discrete and special needs of the particular child, both to protect the child's best interest and meaningfully assess the parent's willingness and ability to provide proper and effective parental care and control for that child. *See* A.R.S. § 8-201(15)(a)(i).

**¶13**        We are mindful that the minimal standard of parental care and control is far more extensive for special-needs children than for healthy

children, but the statutory definition of "dependent child" frames a child-specific inquiry that turns on whether a particular child is receiving "*proper* and *effective* parental care and control" from a parent who is "willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i) (emphasis added); *see also* A.R.S. § 8-845(B) (child-specific focus continues at disposition, where the court must consider "the health and safety of the child as a paramount concern"); Ariz. R.P. Juv. Ct. 45(B) (noting admissible "reports" are to address topics "appropriate to the hearing," including "[t]he services provided to meet the child's needs" and "special education services"). This is a variable standard, necessarily tethered to the child's medical condition and individual needs. *Cf. Matter of Appeal In Cochise Cty. Juvenile Action No. 5666-J*, 133 Ariz. 157, 160 (1982) (recognizing in child dependency context that no "rigid definition" exists for "neglect" or "what is necessary" for a child's well-being); *In re Pima County, Juvenile Action No. J-31853*, 18 Ariz. App. 219 ("The expression 'neglect' has no fixed meaning, but varies as the context of circumstances changes.").[2]

¶14 On this record, we affirm the superior court's dependency finding. L.M. is a special-needs child whose precarious medical condition demands proper and effective parental care and control. Her medical needs are uniquely onerous, complex and pressing. She requires round-the-clock medical care and relies exclusively on others to meet her basic needs. She requires an attentive and meticulous caregiver to guard against an ever-present slate of mortal risks, including aspiration, choking, infections and falls.

¶15 The court received ample evidence that Mother lacked the capacity and vigilance to safeguard L.M. by securing and ensuring the uninterrupted care and undivided attention she requires. To begin, the court found Mother was "currently abusing methamphetamine," which was "especially concerning because of [L.M.]'s serious medical challenges." Despite Mother's assurances that methamphetamine enhanced rather than impaired her parental prowess, a DCS case manager testified that "parents under the influence of methamphetamine tend to neglect their children," "forget to feed them" and "forget that they have needs." The court determined that Mother's methamphetamine abuse placed L.M. at great peril and she was "unable to properly care for" her medically-fragile daughter. Given L.M.'s heightened medical needs, Mother's substance

---

[2] Arizona courts have likewise recognized the fact-specific nature of a parent's duty to provide "medical care *as may be required.*" *No. 5666-J*, 133 Ariz. at 160 (emphasis added).

abuse might have satisfied the dependency standard alone, but the court pointed to still more evidence.

¶16            The record indicated that Mother was unreliable, unresponsive and careless at times.  She failed to demonstrate an appropriate level of diligence and concern.  She neglected to equip school officials with a feeding machine, the singular device they needed to feed, hydrate and medicate her daughter.  She ignored or forgot about many of her daughter's doctor appointments and neglected to follow up with a neurology specialist for several months, despite being instructed to do so.  She also ignored warnings and occasionally fed L.M. orally, despite a high risk of aspiration and choking, which the court described as evidence of Mother "choosing to do things the way she want[ed] to even if advised not to do it by medical providers."  She failed to notice and then minimized a foul-smelling, baseball-sized red sore on L.M.'s neck.  She also neglected to maintain L.M.'s medical equipment, increasing the risk of infection.

¶17            Nor did Mother spring into action when informed that L.M. was ill or needed a feeding machine.  She instead waited hours to tackle these emergencies, leaving L.M. without basic nourishment and parental care for extended periods.  School officials, a nurse and DCS witnesses explained that Mother was hard to reach.  She did not answer her phone and her voicemail was too full to accept additional messages.  The school nurse opined that L.M. was harmed by Mother's unresponsiveness.

¶18            We are unpersuaded by Mother's attempt to direct us to more favorable evidence for her position.  She asks us to reweigh the evidence presented to the superior court, ignoring or discounting the weight of adverse evidence, which we will not do.  *Jesus M. v. Ariz. Dep't Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).  We defer to the superior court, which heard and weighed the evidence, observed the parties and witnesses, gauged credibility and resolved questions of fact.  *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286-87, ¶ 16 (App. 2016).

¶19            In sum, L.M. depends upon a heightened level of uninterrupted care for her very survival, but Mother has proven unwilling or unable to grasp the complexities and demands of caring for her daughter.  L.M. is thus dependent as to Mother.

## CONCLUSION

¶20 We affirm the superior court's dependency finding.



AMY M. WOOD • Clerk of the Court
FILED: AA