IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHELLA H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.G., G.H., A.H., A.H., I.H., *Appellees.*

No. 1 CA-JV 15-0140
FILED 1-12-2016

Appeal from the Superior Court in Maricopa County
No.  JD29771
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By David C. Lieb
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellees*

**OPINION**

Presiding Judge Kenton D. Jones delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

**J O N E S**, Judge:

¶1   Shella H. (Mother) appeals the juvenile court's order adjudicating J.R.H., G.R.H., A.D.H.H., A.H., and I.H. (the Children) dependent. We hold the juvenile court must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child. Because the record contains reasonable evidence to support the court's order finding the Children were dependent as to Mother on the ground of domestic violence at the time of the dependency adjudication hearing, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2   In January 2015, Mother left the Children, ages eleven, ten, seven, two, and six months, unsupervised in a hotel room where they were living, while she was passed out in the bathroom after vomiting blood on the floor and sink. When the Children found Mother unresponsive, they contacted a maternal aunt who called emergency services. Mother was admitted to the hospital; subsequent testing revealed her blood alcohol concentration was 0.24. Because the Children were unattended and their father (Father) was incarcerated in California at the time,[2] the Department of Child Safety (DCS) assumed temporary custody of the Children and placed them in licensed foster homes.

¶3   Subsequent investigation revealed a significant history of domestic violence between Mother and Father. In fact, Father's recent incarceration resulted from an arrest in December 2014 after he choked Mother, punched her in the face four times, and "held her hostage" in the presence of the Children. When admitted at the hospital in January 2015, Mother reported she suffered several broken ribs from the altercation and moved to Arizona to "escape" the abusive relationship. On the same day the Children discovered their Mother unconscious in a pool of blood and

---

[1]  "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005).

[2]  The Children were adjudicated dependent as to Father on February 12, 2015 on the grounds of neglect, mental health issues, domestic violence, and substance abuse. He did not challenge this determination and is not a party to this appeal.

vomit,[3] Father pled guilty to five counts of child endangerment and was sentenced to probation for two years plus time served. Upon his release, Father immediately attempted to reestablish contact with Mother and the Children.

¶4        Mother told a DCS caseworker that the "domestic violence relationship" with Father had lasted for fifteen years. As a result, both parents had been arrested and both had obtained orders of protection against the other. The three oldest children confirmed regular physical arguments between their parents which had sometimes resulted in physical injury to the Children as well. They also reported Father hit them with belts and other objects and slapped them across the face.

¶5        DCS was further concerned about the effect of the family's transient lifestyle on the Children. The parents reported moving every few days from hotels, the family vehicle, and "the woods." At the adjudication hearing, Mother was unable to provide a physical address for any prior residence.[4] Aside from J.R.H. attending kindergarten for a short time, the Children had never attended school; neither had they received any regular medical care for at least the past six years. The two youngest children, along with a deceased son, were born in hotels. Additionally, Mother had a long history of alcohol abuse, and Father reported using marijuana on a regular basis.

¶6        DCS filed a petition alleging the Children were dependent as to Mother as a result of substance abuse, domestic violence, and neglect. At the dependency adjudication hearing held in March 2015, DCS called Mother as its first witness.

¶7        Mother testified the Children were removed while she was in the hospital because she was "sick" and throwing up blood but denied her ill health resulted from alcohol consumption. When questioned regarding

---

[3]        Mother initially testified her sister picked the Children up from school on this day, where they were later removed by DCS, suggesting the Children were never at the hotel with her. This statement is contrary to her later testimony that her children had not attended school since her now-sixth grader went to kindergarten.

[4]        Again, Mother testified inconsistently, first asserting she lived in Portland for the past eleven years, and then stating she moved to Arizona when her now seven-year-old son was born.

the domestic violence with Father, Mother stated she "would agree that yes, there's been arguing," but it rose to the level of physical violence on only a single occasion, in December 2014.[5] She also denied sustaining any injury or seeking medical treatment after the incident, maintaining Father "was not convicted of that," and his child endangerment convictions "w[ere] for yelling in front of them." Mother testified she did obtain an order of protection against Father, but only because she was advised by DCS to do so, and said she had no concern, at any time, for her safety or that of the Children. She further denied making any of the contrary comments that were reflected in reports from medical personnel and the DCS case manager.

¶8        On cross-examination, Mother's counsel focused her presentation upon evidence suggesting out-of-home care was no longer necessary. Mother provided significant evidence and testimony describing her compliance with random urinalysis testing demonstrating she was substance free and her participation in parent aide services, substance abuse treatment, Alcoholics Anonymous meetings, domestic violence counseling, couples counseling, parenting classes, and visitation. Her counsel argued DCS could, and should, continue to provide services while the Children remained in her care and implement a safety plan to address the domestic violence. Mother further argued DCS failed to present any evidence the Children were actually harmed by her religious-based objections to traditional schooling and medical care.

¶9        At the conclusion of DCS's presentation, Mother's counsel called the current DCS case manager to testify. Counsel for DCS questioned the relevance of testimony from an individual who did not receive the case until "well over a month after removal," and the juvenile court judge agreed, stating evidence regarding Mother's efforts to remedy "would come after a dependency finding." The judge allowed the testimony, but advised she would only give that evidence the weight she believed it deserved, explicitly noting her understanding that DCS's burden was "to prove the allegations as they existed at the time the dependency was filed . . . not whether or not Mother has remedied those." The judge further advised she would not "expand this beyond a dependency adjudication"

---

[5]        This position is inconsistent with prior documented arrests and reports to child protective service agencies in other states, as well as Mother's initial request that Father not participate in the team decision-making meeting.

and cautioned she "may well sustain an objection to going beyond the scope of necessary evidence for the dependency adjudication."

¶10 The current DCS case manager confirmed DCS had requested Mother participate in urinalysis testing, substance abuse treatment, and parent aide services, that these services were initiated quickly after the Children were removed, and Mother had not tested positive for any substances since the removal.

¶11 After taking the matter under advisement, the juvenile court issued a ruling finding DCS had proven by a preponderance of the evidence the Children were dependent as to Mother on all three grounds alleged. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 8-235(A),[6] 12-120.21(A)(1), and -2101(A)(1) and Arizona Rules of Procedure for the Juvenile Court 103(A). *See Yavapai Cnty. Juv. Action No. J-8545*, 140 Ariz. 10, 14 (1984) (holding "orders declaring children dependent . . . are final orders subject to appeal by aggrieved parties").

## DISCUSSION

¶12 Mother argues the juvenile court erred by focusing on whether the Children were dependent at the time they were removed, rather than whether the Children remained dependent at the time of the adjudication. DCS concedes on appeal that the court must determine whether a child is dependent based upon the circumstances existing at the time of the adjudication hearing. *See* A.R.S. § 8-201(14)(a)(i) (defining a dependent child in the present tense as one who "*has* no parent or guardian, or one who *has* no parent or guardian willing to exercise or capable of exercising such care and control") (emphasis added), (iii) (defining a dependent child in the present tense as one whose "home *is* unfit by reason of abuse, neglect, cruelty or depravity by a parent") (emphasis added); *see also* A.R.S. § 8-844(B) (requiring the court to consider present circumstances that would "eliminate the need for removal of the child"), (C)(1) (directing the court to determine "that the allegations contained in the petition *are* true") (emphasis added). DCS argues, however, the court's order adjudicating the Children dependent is supported by reasonable evidence establishing Mother remained unable or unwilling to parent at the time of

---

[6] Absent material revisions from the relevant date, we cite a statute's current version.

the adjudication hearing as a result of domestic violence, and therefore, we should affirm.[7]

**¶13** A finding of dependency requires proof by a preponderance of the evidence. A.R.S. § 8-844(C)(1). We review an order adjudicating a child dependent for an abuse of discretion, deferring to the juvenile court's ability to weigh and analyze the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). We will only disturb a dependency adjudication if no reasonable evidence supports it. *Id.* (citing *Willie G.*, 211 Ariz. at 235, ¶ 21).

**¶14** A child may be dependent when the parent is unwilling or unable to protect the child from abuse. *See Pima Cnty. Juv. Action No. J-77188*, 139 Ariz. 389, 392 (App. 1983) ("Effective parental care clearly implies prevention of sexual as well as other physical abuse."); *see also Pima Cnty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 605 (App. 1990) ("A finding of dependency may be predicated on one parent's failure to prevent abuse by another parent.") (citing *Pima Cnty. Juv. Dependency Action No. 97247*, 158 Ariz. 55, 57 (App. 1988)). In adjudicating the Children dependent as to Mother on the ground of domestic violence, the juvenile court made the following findings:

- Mother admitted she and Father had been in a violent relationship for fifteen years and also identified two instances, one in 2012 and one in 2014, where either Mother or Father had been arrested for domestic violence.

- The Children witnessed Mother and Father engaging in violent altercations many times, which included watching Father choke Mother, and reported that Father is scary during these events.

- A.D.H.H. suffered a broken wrist on one occasion when he attempted to intervene on Mother's behalf during an altercation.

---

[7] DCS does not argue on appeal that the order adjudicating the Children dependent should be upheld on the grounds of substance abuse or neglect.

- Mother voluntarily released the order of protection she obtained against Father following the December 2014 altercation after only one day.

¶15        Importantly, the juvenile court made a specific finding that "during her own testimony, [M]other attempted to minimize the length, scope, and nature of domestic violence history between [M]other and [F]ather." We will not second-guess the court's assessment of Mother's credibility as a witness. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.") (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Moreover, this finding contradicts Mother's contention that, had she been granted greater opportunity at the adjudication hearing to elicit information, she would have been able to demonstrate that the circumstances giving rise to the removal on the basis of domestic violence had been eliminated. Mother testified first, before any discussion regarding the applicable standard; she had an opportunity to discuss, at length, her sobriety, her housing situation, and her participation in services including domestic violence counseling.[8] Yet, when given the opportunity to establish that the Children would be safe in her care, she chose instead to test the court's tolerance with implausible testimony.

¶16        And, contrary to Mother's assertion, domestic violence need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency on these grounds; the substantiated and unresolved threat is sufficient. *See 96290*, 162 Ariz. at 604 (rejecting argument that juvenile court erred in adjudicating a child dependent when he was born after events giving rise to a finding of dependency for his older siblings, and noting instead that "[a]ssuming that the state can prove the conditions creating the dependency as to the older children, and that those conditions pose an imminent risk of harm to the newborn, the statute does not preclude the state from acting to protect the newborn until a specific injury has been inflicted upon him"). This is

---

[8]        The court sustained only one of DCS's objections to the relevance of the testimony sought to be elicited by Mother's attorney, determining that whether DCS asked Mother to complete domestic violence counseling was not relevant to the dependency adjudication. Mother has not and cannot establish prejudice from preclusion of that information where she had already presented testimony and evidence that she had self-referred and was actively engaged in domestic violence counseling.

particularly true where, as here, the parent denies the alleged conduct. As we have previously held:

> [This Court] will not hesitate to affirm a finding of dependency as to parents who presently deny that they are responsible for past abuse and neglect for the obvious reason that such denial of responsibility supports a finding that their children do not have parents presently willing to or capable of exercising proper and effective parental care and control. To hold otherwise would permit an abusive or neglectful parent to defeat an allegation of dependency by the mere passage of time.

*Id.*

¶17       Although the juvenile court articulated the wrong moment in time when the dependency must be found to have existed, in its discussions with counsel during the adjudication hearing it ultimately concluded "[M]other *is* unable to provide for her children due to domestic violence." (Emphasis added). Viewing the evidence in the light most favorable to upholding the court's ruling, we conclude substantial evidence exists to support a finding that domestic violence regularly occurred between Mother and Father, in the presence of the Children and sometimes causing serious physical injury to both Mother and the Children, and at the time of the hearing, Father had been released from jail to serve a term of probation and remained a present and viable threat to the well-being of the Children. Substantial evidence also supports a determination that Mother failed to even acknowledge, let alone address, these concerns through her denial of the issue. This assessment provides an additional basis to find she is presently unable or unwilling to parent and protect the Children. Thus, the court's specific findings are supported by the record and are objectively sufficient to show DCS proved, by a preponderance of the evidence, that the Children were dependent as to Mother on the ground of domestic violence at the time of the adjudication hearing.

**CONCLUSION**

¶18 The order of the juvenile court finding the Children dependent as to Mother is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama