NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEBORAH S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.A., *Appellees.*

No. 1 CA-JV 19-0139
FILED 1-30-2020

Appeal from the Superior Court in Maricopa County
No. JD36045
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Acting Presiding Judge David D. Weinzweig and Chief Judge Peter B. Swann joined.

**G A S S**, Judge:

**SUMMARY OF DECISION**

¶1        Deborah S. (Mother) appeals the superior court's order finding her child, M.A. (Child), dependent.[1] The superior court found the Child dependent by a preponderance of evidence because (1) Mother failed to participate in parent-aide services, a psychological evaluation, substance-abuse assessment and treatment, and substance-abuse testing, and (2) Mother's living conditions were unsuitable for the Child. Because reasonable evidence supports these findings, the superior court's dependency judgment is affirmed.

**PROCEDURAL BACKGROUND**

¶2        On June 27, 2018, the Department of Child Safety (DCS) served Mother with a temporary custody notice. On June 29, 2018, DCS filed a dependency petition. DCS alleged Mother could not provide proper and effective parental care and control (1) because of her chronic substance abuse and (2) because she could not provide a safe and suitable home environment. Mother contested DCS's allegations.

¶3        On April 15, 2019, the superior court held a dependency trial. Mother initially denied the allegations in the dependency petition. After a recess during the trial, Mother changed her position. She told the superior court she still denied the allegations in the petition but wanted to enter a no-contest plea. Based on the dependency petition and the exhibits admitted at trial, the superior court found the Child dependent. As part of this finding, the superior court found the Indian Child Welfare Act (ICWA) did not apply to the Child.

---

[1] The superior court also found the Child dependent as to his father; that ruling is not at issue in this appeal.

¶4        Mother timely appealed. This court has jurisdiction under Arizona Revised Statutes (A.R.S.) sections 8-235, 12-120.21(A)(1) and 12-2101(A)(1).

**PRINCIPLES OF LAW AND STANDARD OF REVIEW**

¶5        DCS must prove a child is dependent by a preponderance of the evidence. *See Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016); *see also* Ariz. R. P. Juv. Ct. 55. A child is dependent when the child is "[i]n need of proper and effective parental care and control and . . . has no parent . . . willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i).

¶6        The superior court must base its ruling on the circumstances at the time of the dependency adjudication trial. *Shella H.*, 239 Ariz. at 50, ¶ 12. The superior court, however, need not disregard the circumstances giving rise to the dependency in the first place. *Id.* at 51, ¶ 16. Such circumstances "need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency[,] . . . the substantiated and unresolved threat is sufficient." *Id.*

¶7        An appellate court reviews a dependency finding for abuse of discretion. *See Shella H.*, 239 Ariz. at 50, ¶ 13. An appellate court will reverse a dependency finding only when no reasonable evidence supports it. *Id.* The primary considerations in a dependency are the welfare and best interests of the child. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 234, ¶ 17 (App. 2007). The superior court is in the "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Christina G. v. Ariz. Dep't. of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011). Its assessments will not be second-guessed. *See Shella H.*, 239 Ariz. at 50, ¶ 15. For this reason, an appellate court views the facts and draws reasonable inferences in the light most favorable to affirming the superior court. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**FACTS**

¶8        On June 26, 2018, DCS received an initial report regarding the Child. The initial report alleged the Child and his parents had been squatting in a home for nine months. The initial report also alleged the home was extremely dirty, had garbage strewn in the front living room, had no running water or electricity, and had exposed wiring. A later report alleged Mother was using and selling drugs from the home and had been

hospitalized the week before for a drug overdose. DCS investigated and observed multiple people coming in and out of the home.

¶9            On June 27, 2018, DCS safety specialists went to the home to see the Child. Mother said the Child was at a friend's home and refused to allow DCS to do a "walk through" of the home. A few hours later, DCS safety specialists returned with a Maricopa County Sheriff's Deputy. At that time, the safety specialist checked an external waterspout and verified the home had no running water. Mother again said the Child was not there and refused to allow DCS to enter the home. DCS later served Mother with a temporary custody notice.

¶10           On June 28, 2018, DCS visited Mother's home for the third time. During this visit, Mother said she had given custody of the Child to her friend Eric R. (Eric). The next day, June 29, 2018, DCS filed the dependency petition.

¶11           On July 2, 2018, DCS tried to reach Eric. At this point, DCS understood Eric had taken the Child to California. Eric and the Child returned to Arizona. On July 5, 2018, DCS and Glendale Police removed the Child from Eric's home. DCS placed the Child in a DCS-approved foster home.

¶12           On July 6, 2018, Mother arrived late to a Team Decision Meeting (TDM). During the TDM, DCS offered Mother parent-aide services, a psychological evaluation, substance-abuse assessment and treatment, and substance-abuse testing. Mother refused all services. Mother participated in supervised visitation with the Child but refused to sign the visitation agreement.

¶13           Mother moved from the home to a travel trailer. She did not provide DCS with proof of housing. During the dependency trial, Mother agreed the travel trailer was not adequate to house the Child.

**ANALYSIS**

¶14           Reasonable evidence supports the superior court's dependency findings.

I.      Drug dependency

¶15           Mother has had issues with substance abuse going back at least fifteen years. A 2003 Florida DCS case showed the removal of another child from Mother's custody. The Florida case showed Mother smoked

crack cocaine in the other child's presence. Here, DCS safety specialists observed potential drug activity in Mother's home. DCS also observed Mother apparently under the influence at the TDM.

**¶16**      Mother argues nothing in the DCS reports, aside from the 2003 Florida case, indicates Mother used methamphetamine. Mother argues this lack of evidence fails to meet the preponderance of evidence burden set by Rule 55(c) of the Arizona Rules of Procedure in the Juvenile Court. But at the time of adjudication, Mother had not completed any substance-abuse assessment, treatment, or testing, including hair follicle and urinalysis testing. Mother, therefore, did not demonstrate sobriety.

**¶17**      Taken as a whole, the above evidence supports the superior court's dependency finding based on substance abuse.

II.      Mother's housing

**¶18**      Despite Mother's prior testimony, she now argues her housing situation did not support a dependency finding. At the dependency hearing, Mother conceded her then-living conditions were not adequate for the Child and she could not provide suitable housing at that time. This evidence supports the superior court's finding on this issue.

**CONCLUSION**

**¶19**      Mother's failure to participate in services and her unsuitable living conditions are reasonable evidence she is not willing or capable of exercising proper and effective parental care and control. *See Shella H.,* 239 Ariz. at 51, ¶¶ 16-17; *see also Pima Cty. Juv. Dependency Action No. 96290,* 162 Ariz. 601, 604-05 (App. 1990). The dependency judgment is affirmed.

