NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAVID B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.B., *Appellees.*

No. 1 CA-JV 20-0218
FILED 12-1-2020

Appeal from the Superior Court in Maricopa County
No. JD533246
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge David B. Gass and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1　　　　David B. ("Father") appeals from the juvenile court's order adjudicating his son A.B. dependent as to him. Lorena B. ("Mother") is not a party to this appeal. For the following reasons, we affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2　　　　Father and Mother are the biological parents of A.B., born in 2009. In February 2020, the Department of Child Safety ("DCS") received a report that Father physically abused A.B. A.B. told a DCS investigator that Father grabbed him by his head and chin, lifted him off the floor, and threw him onto a couch. He reported being scared of Father. A.B. also reported he witnessed Father punch Mother and push her into a shower curtain at a hotel. Mother told DCS that Father had previously physically abused her. Father denied any wrongdoing, blaming all of the couple's strife on A.B.

¶3　　　　In early March, DCS removed A.B. from his parents and placed him with his half-sister and her husband. DCS then filed a dependency petition against both parents, alleging neglect based on domestic violence, substance abuse, and mental health. Specifically, the petition alleged A.B. witnessed Father engage in domestic violence altercations with Mother, who acknowledged several instances of abuse from Father. At a preliminary protective hearing in March 2020, Father agreed to attend an intake evaluation at TERROS to determine if he needed individual counseling with a domestic violence component.

¶4　　　　The juvenile court held a dependency hearing at which both the DCS investigator and ongoing case manager testified. The DCS investigator testified that A.B. told her about witnessing domestic violence between Father and Mother. The investigator believed A.B. experienced emotional trauma from witnessing the domestic violence. She also noted Father, who blamed the domestic violence on A.B., failed to take responsibility for his involvement in these incidents. Father and Mother

2

confirmed to the investigator they each had an order of protection against the other for domestic violence. Over the years, there were eight separate reports (some unsubstantiated) of child neglect and domestic violence between Father and Mother, leading the investigator to believe A.B. remained at great risk of harm. Father refused to participate in any domestic violence treatment services until the court ordered him to; the case manager believed Father was not taking the issues seriously because he would not address his domestic violence issues.

¶5 Father also testified. Father denied having a history of domestic violence with Mother, but he admitted to having arguments with Mother (mostly about A.B). He explained that after A.B. was removed, he was arrested for "hitting a box off [of a] chair" during an argument with Mother. A court in Fountain Hills required Father to participate in domestic violence classes as a result of that incident. Father admitted to the orders of protection he and Mother had obtained against each other, citing arguments over A.B. A judge quashed both orders.

¶6 After the hearing, the juvenile court found DCS proved, by a preponderance of the evidence, A.B. was dependent as to Father on three of the four alleged grounds. The court pointed to the testimony regarding the parents' history of domestic violence incidents, including the dueling orders of protection. The court also noted Father's admission of engaging in "verbal arguments" (but not domestic violence) and that Father recently pled guilty to a domestic violence offense involving Mother. Finally, the court relied on Father's failure to seek treatment or complete any services to address his domestic violence issues. Father timely appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) and 12-120.21(A)(1), and Arizona Rule of Procedure for Juvenile Court 103(A).

## DISCUSSION

¶7 We review dependency orders for an abuse of discretion. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). The juvenile court has a great deal of discretion in dependency cases because the primary concern is the child's best interests. *Arturo D. v. Dep't of Child Safety*, 249 Ariz. 20, 25, ¶ 16 (App. 2020). We will accept the juvenile court's findings of fact unless they are clearly erroneous and will affirm unless no reasonable evidence supports the dependency finding. *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527, ¶ 9 (App. 2020).

**¶8** A dependent child is one without a parent or guardian capable of exercising "proper and effective parental care and control" or one with an "unfit" home because of neglect. A.R.S. § 8-201(15)(a)(i), (iii). Neglect occurs when a parent is unable or unwilling "to provide [a] child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). The juvenile court will find a child dependent if DCS proves the allegations in the dependency petition by a preponderance of the evidence presented. A.R.S. § 8-844(C)(1)(a)(iii).

**¶9** On appeal, Father argues that even if the past incidents between he and Mother are characterized as domestic violence, they do not rise to the level of neglect. He notes that DCS determined several reports of domestic violence between he and Mother were unsubstantiated and that A.B. did not witness some of those incidents.

**¶10** A "substantiated and unresolved threat" of domestic violence is sufficient to support a finding of dependency even when the domestic violence is not "continuous or actively occurring." *Shella H.*, 239 Ariz. at 51, ¶ 16. This is particularly true when Father completely denies domestic violence is present. *See id.* The juvenile court found that Father refused to participate in domestic violence services or admit fault. The case manager testified that despite A.B. not witnessing all of the alleged domestic violence incidents, those incidents demonstrate the parents' erratic behavior and an unwillingness to change their behavior for A.B.'s safety. And Father admitted to being arrested for a domestic violence offense after DCS removed A.B., indicating that the threat of domestic violence is unresolved.

**¶11** DCS representatives testified to multiple domestic violence incidents involving Father. He attempted to contradict this evidence by downplaying these incidents as mere arguments or disagreements. "We defer to the superior court, which heard and weighed the evidence, observed the parties and witnesses, gauged credibility and resolved questions of fact." *Joelle M.*, 245 at 528, ¶ 18. We decline Father's invitation to reweigh the evidence. *See id*.

**¶12** The juvenile court did not abuse its discretion because the record contains reasonable evidence to support the allegation of neglect due to domestic violence. We need not address the remaining grounds in the dependency petition. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000) (appellate court need not address other statutory grounds for terminating parent's rights if there is sufficient evidence of one ground).

**CONCLUSION**

¶13 We affirm the juvenile court's dependency finding.



AMY M. WOOD • Clerk of the Court
FILED:     AA