NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIMOTHY I., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.I., *Appellees*.

No. 1 CA-JV 20-0376
FILED 4-29-2021

Appeal from the Superior Court in Maricopa County
No. JD39753
The Honorable Robert Brooks, Judge

**VACATED AND REMANDED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Neaverth
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Timothy I. ("Father") appeals the superior court's order adjudicating his child, J.I., dependent. For the following reasons, we vacate and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Father and Adreanna M. ("Mother")[1] are the biological parents of J.I., born in 2015. The Department of Child Safety ("DCS") had on ongoing, several-years' relationship with the family due to reports of substance abuse and domestic violence. Father was incarcerated for assaulting Mother in November 2017. Following his release in February 2019, Father moved to Louisiana, while J.I. remained in Arizona with Mother.

¶3        In August 2020, DCS received a report that Mother was observed at J.I.'s school struggling to stand, agitated, confused, shaking, and vomiting into a trash can. In response, DCS visited Mother's home, and she appeared to be under the influence of substances. DCS filed a dependency petition as to both Mother and Father, and removed J.I. from Mother's home, along with Mother's two older children. The children were placed with a family friend.

¶4        In the petition, DCS alleged J.I. was dependent as to Father because he was "unwilling or unable to provide the child with proper and effective parental care and control by failing to provide for the child's basic needs, such as, food, shelter, clothing, proper supervision, and/or medical care." DCS alleged that Father had not seen J.I. in six months or longer, he had not provided financial support, and he had sporadic phone contact with J.I. DCS also alleged Father had a history of substance abuse and domestic violence, and he was currently residing out of state with a job as a truck driver that kept him from home for multiple days at a time.

---

[1]        Mother is not a party to this appeal.

**¶5**        A dependency hearing was held in November 2020.  DCS stated its concerns with Father were that he lived out of state, he had engaged in domestic violence in the past with Mother, and he had left J.I. in Arizona with Mother with the knowledge that Mother abused substances.  DCS also stated it wanted to rule out the possibility that Father engages in substance abuse and ensure that if Father is away for work, an appropriate person would provide care for J.I. in his place.  The court stated that the case was "a relatively close call, perhaps as close as we get in these types of cases."  Ultimately, however, the court found J.I. dependent as to Father, briefly noting on the record concerns of unresolved domestic violence and that it wanted to give Father time to establish his relationship with J.I.

**¶6**        Father timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶7**        Father argues there was insufficient evidence to prove J.I. was dependent.  Father contends the evidence presented by DCS was stale and unrelated to the circumstances at the time of trial.

**¶8**        For a child to be found dependent, DCS must prove by a preponderance of the evidence one of the grounds found in A.R.S. § 8-201(15).  A.R.S. § 8-844(C).  When the superior court finds that DCS "has proven the allegations in a dependency petition by a preponderance of the evidence, it must '[s]et forth specific findings of fact in support of a finding of dependency,' which 'shall be in the form of a signed order or contained in a minute entry.'"  *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 295, ¶ 12 (App. 2020) (quoting Ariz. R. P. Juv. Ct. 55(E)(3)); *see also* A.R.S. § 8-844(C)(1)(a)(ii).  These requirements are mandatory in every dependency proceeding, and a party cannot waive the requirement by failing to properly raise the issue.  *Id.* at 295-98, ¶¶ 12, 15-25.  The requirement for specific findings of fact and conclusions of law exists to allow the appellate court to assess which allegations were proven and whether the superior court properly applied the law in making those determinations.  *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012).  Meaningful appellate review requires that the superior court clearly state both its findings as well as the support for its conclusions.  *Francine C.*, 249 Ariz. at 295-96, ¶ 13.

**¶9**          "[F]indings also serve other important purposes, including prompt[ing] judges to consider issues more carefully because they are required to state not only the end result of their inquiry, but the process by which they reached it." *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538, ¶ 18 (App. 2018) (alteration in original) (internal quotation marks and citation omitted). This is particularly important when the parties and court believed this case to be a "close call," and the court stated, "I will admit I'm not convinced by [DCS'] evidence here." It was imperative, then, that the court issue findings of fact that were sufficiently specific to explain the basis on which the court found the dependency and the facts used to support its decision.

**¶10**          In a signed minute entry issued following trial, the court stated it was finding a dependency because "[F]ather is unwilling or unable to provide the child with proper and effective parental care and control by failing to provide for the child's needs, such as food, shelter, clothing, proper supervision, and/or medical care." This is merely a recitation of the definition of a "dependent child" and A.R.S. § 8-201(15)(a)(i)-(ii), and the court failed to explain the facts that supported this finding. The court's dependency order lacks findings that are sufficiently specific to permit effective appellate review.

**¶11**          "When a court fails to make or makes insufficient findings of fact and conclusions of law, a reviewing court must tailor the proper remedy [for] each case." *Francine C.*, 249 Ariz. at 299, ¶ 27 (internal quotation marks and citations omitted). Generally, this will require an appellate court to remand for further findings. *Id.* However, an appellate court may affirm without findings if a case does not turn on contested facts, and the record is so clear that the appellate court can fully understand the issues raised without findings. *Id.* Here, however, it is unclear exactly the basis on which the superior court found a dependency, and the record contains sufficient contested facts to justify a remand.

**¶12**          While the signed minute entry makes no express mention of domestic violence, at trial, the court seemed to imply that it was finding a dependency, at least in part, based on domestic violence:

> My concern here is that [J.I.] is a younger child, and I want to give you time to establish that relationship; I believe that until the evidence show[s] that until that relationship is established and that any concerns about domestic violence are resolved that there is a potential for her to have some risk. I know that it would not be directly at your hand, sir. But to make sure

4

that she is safe with you, I am going to . . . find for today that
[J.I.] is dependent as to [Father].

The court stated it was concerned about the risk of harm to J.I. due to
domestic violence, but then it immediately stated it knew any harm to J.I.
"would not be directly" at the hands of Father. If the court does not believe
Father would act violently towards J.I., it is unclear why the court needed
to ensure "that she is safe with [Father]." If the court was concerned about
J.I.'s potential exposure to domestic violence between Mother and Father,
it was undisputed Mother and Father did not live in the same state and they
had not had any meaningful, face-to-face contact with one another since
Father's conviction in 2017. Father also claimed to have taken domestic
violence classes while in prison.

¶13        While "domestic violence need not be continuous or actively
occurring at the time of the adjudication hearing to support a finding of
dependency," a dependency adjudication must be "based upon the
circumstances existing at the time of the adjudication hearing" and not
merely on past circumstances. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47,
50-51, ¶¶ 12, 16 (App. 2016). DCS presented no evidence that there
currently existed a substantiated or unresolved threat of domestic violence.
*See id.* The allegations of domestic violence presented, without more,
would have been insufficient to support a finding of dependency, anyway.

¶14        Additionally, DCS alleged Father had seen J.I. only three
times since he moved to Louisiana, while Father testified that he had visited
J.I. six or seven times. Father claimed to regularly talk on the phone with
J.I., send gifts, and send about $200 each month in financial support. Father
also testified that he has a home, a stable job, and he participates in regular
drug testing for his job. A DCS caseworker testified that J.I. "expresses
great joy and happiness when talking about her father," and "does wish to
continue to have a relationship with him to include physical visitation and
phone calls when possible." While DCS stated Father refused its offer to
transfer J.I. to Louisiana, Father denied declining the interstate compact.
Father testified that he declined DCS' offer to move J.I. to a relative within
Arizona, as he preferred to keep J.I. with her brothers at this time.
However, Father stated that "if the time comes, and I can take her out-of-
state, . . . I'm definitely for that." Father alleged that his mom and sister,
J.I.'s paternal grandmother and paternal aunt, were willing to move nearby
to assist with J.I. while he was away for work. Father also testified that his
work was very family-oriented and willing to work with him and
potentially allow him to drive local routes so that he is home on a more

regular basis. Given the contested facts in this case, we are unable to affirm without the aid of factual findings and conclusions of law.

## CONCLUSION

¶15 For the foregoing reasons, we vacate and remand.



AMY M. WOOD • Clerk of the Court
FILED: AA