NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RIAN J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.R., K.J., *Appellees.*

No. 1 CA-JV 22-0093
FILED 9-27-2022

Appeal from the Superior Court in Maricopa County
No. JD30083
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**     Rian J. ("Father") appeals from the juvenile court's judgment that Kimberly[1] is dependent. He argues there are insufficient grounds to support the dependency determination. We find no reversible error and affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**     Father and Denisse P. ("Mother") are the parents of Kimberly, born in 2021. Mother has another child, Charlotte, who was born in 2017. Charlotte has a different father, Christopher.

**¶3**     Father and Christopher have an antagonistic relationship. Christopher and Mother were dating when Father met Mother in 2017. Soon after, Father was incarcerated for over two years for a domestic violence offense. During that time, Christopher began to suspect that Father and Mother were romantically involved and assaulted Mother. In September 2020, Mother and Father "official[ly]" started their relationship after Father's release from prison. Christopher reacted by striking Father with his car.

**¶4**     Nearly one year later, Father and Christopher got into another confrontation. As part of a family court order, the court ordered Christopher to pick up Charlotte from Mother at a bus stop. The order forbade Father from attending these exchanges. But Father accompanied Mother to the exchange location. When Christopher saw Father, the two began to shout at one another. This argument devolved into a physical fight. Kimberly and Charlotte were at the incident, which lasted nearly ten minutes. Father did not act to remove the children from the situation during the encounter.

---

[1]     To protect the children's identities, we refer to them by pseudonyms.

**¶5** The record also contains evidence of domestic violence between Father and Mother. Since 2021, two incidents have arisen where Mother contacted the police and claimed Father attacked her.

**¶6** First, in March 2021, Mother, Father, and Charlotte were attending a doctor's appointment when Mother discreetly asked a nurse to call the police. Mother reported that during an argument earlier that day, Father punched her in the face several times and threw her to the ground. She said Father had also placed a gun to her head and threatened to kill her. The responding officers noticed bruises on Mother. Mother directed officers to search her bathroom, where they found a loaded revolver. Mother was five months pregnant with Kimberly during this incident.

**¶7** Second, in October 2021, Mother called the police to report that she and Father had gotten into a fight. She stated Father had slapped and pushed her, thrown objects around the room, and shattered the oven's glass door. She played for the officers a voicemail message from Father in which he admitted to being involved in a physical altercation. Officers investigated the home and found the oven door broken.

**¶8** In both incidents, Mother later recanted her statements to the police, claiming she lied. Mother rationalized her initial reports by claiming she was angry with Father for cheating on her and wanted to get "revenge." Mother explained her injuries from the March incident by claiming she had fought with an unknown woman she found exiting her home. She stated that she had acquired the gun and planted it to get Father in trouble for violating his probation.

**¶9** Following these two domestic violence incidents and the bus stop incident with Christopher, the Department of Child Safety ("DCS") filed a dependency petition. In a contested hearing in March and April, the juvenile court found DCS proved the allegations that Kimberly was dependent as to Father.

**¶10** Father appealed.

## DISCUSSION

**¶11** In dependency cases, the juvenile court is provided "a great deal of discretion." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). We view the evidence in the light most favorable to sustaining the court's findings, and we will affirm the court's ruling unless no reasonable evidence supports the decision. *Id.*

¶12        A "dependent child" is one found "[i]n need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control" or a child found in a home "unfit by reason of abuse [or] neglect . . . by a parent." A.R.S. § 8-201(15)(a)(i), (iii). A "substantiated and unresolved threat" of domestic violence is sufficient grounds to support a finding of dependency. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 51, ¶ 16 (App. 2016).

¶13        Father claims that there has never been domestic violence between Kimberly's parents. Because the court considered the alleged domestic violence in reaching its decision, Father argues that the court erred by ruling that Kimberly is dependent as to Father.

¶14        We "defer[] to the juvenile court's ability to weigh and analyze the evidence." *Shella H.*, 239 Ariz. at 50, ¶ 13. The physical evidence and police reports reasonably support the juvenile court's findings.

¶15        Father emphasizes that the juvenile court had to account for the circumstances as they were "at the time of the hearing" and suggests that the court improperly glossed over favorable changes in those circumstances. Father notes that he "has taken active steps to improve his life" and has participated in double the required domestic violence courses assigned to him as a part of his probation.

¶16        But the juvenile court considered these facts as part of its judgment. The court "recognize[d] that the parents have been participating in services but *despite* their participation, they still have failed to make any behavioral changes." The court found that Father's testimony was "reflective of him thinking only about himself," pointing out that Father expressed pride rather than regret in his participation in the November incident with Christopher. Finally, the court found that Father's failure to recognize domestic violence in his relationship with Mother and his denial of any wrongdoing shows an ongoing safety threat to the children. The juvenile court did not abuse its discretion.

**CONCLUSION**

¶17        We affirm.

