NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE DEPENDENCY AS TO E.W. and D.W.

No. 1 CA-JV 23-0083
FILED 10-5-2023

---

Appeal from the Superior Court in Maricopa County
No. JD535134
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

_____

**T H U M M A**, Judge:

**¶1**         Father appeals an order finding his children dependent. Because he has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Father and Mother have two children who are the subject of this appeal, E.W. born in 2021 and D.W. born in 2022. Mother has three older children with different fathers. From 2017 to mid-2022, the Department of Child Safety (DCS) received several reports that the parents were engaging in domestic violence and physically abusing Mother's oldest child. Parents refused DCS access to the children and the reports were not substantiated. In mid-2022, DCS offered in-home services, but the parents did not participate.

**¶3**         In September 2022, DCS saw the oldest child with a black eye and swollen lip. Although DCS removed the two oldest children, it left the three youngest, including E.W. and D.W., in the home with a safety plan. DCS filed a dependency petition as to E.W. and D.W., alleging domestic violence as to Father. DCS offered Father in-home services, including the Nurturing Parenting Program (NPP) and Family Connections. Father, however, responded that he did not need in-home services and he did not regularly participate.

**¶4**         Meanwhile, the parents continued to engage in domestic violence. In January 2023, Mother and Father fought in front of the children; Mother later reported Father slapping her, and the case manager saw scratches on her stomach. The case manager also found very little food in the home, and the parents were feeding six-month-old D.W. oat milk, which lacked necessary nutrients. Mother reported the family had recently been evicted and that Father, on whom they were financially dependent, left with the food vouchers. The case manager provided food and ensured Father returned the vouchers that evening.

¶5            In February 2023, Mother called the police and reported she had locked herself in a car with E.W. and D.W. because Father was threatening to take the children. Given the ongoing domestic violence issues, DCS took custody of E.W. and D.W. At that time, both children were dehydrated, with D.W. requiring intravenous fluids.

¶6            DCS referred Father for substance-abuse testing, a psychological evaluation, domestic violence counseling, NPP, Family Connections and supervised visits. Father disagreed with the need for services but began some of them. Father completed a psychological evaluation and an intake for NPP. He did not complete a hair follicle test as requested but provided a urinalysis sample that was positive for THC. Father visited the children while they were in Mother's care but did not visit them after DCS removed them.

¶7            After an adjudication, the court found E.W. and D.W. dependent, and Father timely appealed. This court has appellate jurisdiction under Article 6, Section, 9, of the Arizona Constitution, Arizona Revised Statutes A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 602-03.

## DISCUSSION

¶8            Father argues insufficient evidence supports the dependency finding. This court will accept the juvenile court's factual findings "if reasonable evidence and inferences support them" and will affirm the court's legal conclusions unless they are clearly erroneous. *Brionna v. Dep't of Child Safety*, 533 P.3d 202, 209 ¶ 30 (Ariz. 2023).

¶9            A moving party must prove dependency by a preponderance of the evidence. A.R.S. § 8-844(C)(1). A "dependent child" is one who is "[i]n need of proper and effective parental care and control and who has . . . no parent . . . willing to exercise or capable of exercising such care and control" or "whose home is unfit by reason of abuse [or] neglect . . . by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(15)(a)(i), (iii). "Neglect" means a parent's "inability or unwillingness . . . to provide [a] child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶10** "The juvenile court must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48 ¶ 1 (App. 2016). "A child may be dependent when the parent is unwilling or unable to protect the child from abuse" or neglect. *See id.* at 50 ¶ 14. But the circumstances that put the child at risk for abuse or neglect "need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency," rather, "the substantiated and unresolved threat is sufficient." *Id.* at 51 ¶ 16.

**¶11** Here, the court found the children dependent as to Father because he engaged in domestic violence in front of them. The court also made "a credibility determination that the instances of domestic violence were not just occasioned by Mother, and that in any event, Father elected to remain in a relationship with Mother . . . despite his acknowledgment that there were problematic instances of domestic violence." The court further found that the children were severely dehydrated and undernourished after being in the parents' care. The trial evidence supported these findings.

**¶12** Father contends that there was no evidence at the time of trial that the children were at risk of domestic violence because he was no longer living with Mother. The evidence shows, however, that a "substantiated and unresolved threat" of domestic violence existed at the time of trial. *See id.* Father testified to a history of violent relationships. He also admitted to at least five domestic violence incidents with Mother. Two incidents occurred two months before trial, and the children were present during both. Father agreed the children were harmed by watching these incidents, but he had not engaged in domestic violence education or counseling. Moreover, although Father had obtained an order of protection against Mother, he kept it in place for only two days.

**¶13** Father also argues that Mother is to blame for the children's condition at removal and asserts they would not be at risk of malnutrition in his care. But the court found that Father contributed to the children's malnourishment. Indeed, Father testified he was the primary food provider for the family. Moreover, Father had been living with Mother and the children just days before the DCS investigator reported that the home had insufficient food for the children. And Father had left the home with the food vouchers, leaving Mother unable to get more food to feed the children.

¶14 Finally, the court found that "Father has only recently obtained new housing, and he admits that he is not legally on that lease" because of a prior eviction. The court also found that DCS had not yet evaluated Father's new residence, Father had only recently begun to engage in services and he had not visited the children since their removal despite DCS setting up supervised visits for him. Reasonable evidence supports these findings and the conclusion that the children were dependent as to Father.

**CONCLUSION**

¶15 Because Father has shown no error, the dependency finding is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA