NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO S.V., E.V., AND I.V.

No. 1 CA-JV 23-0058
FILED 4-16-2024

Appeal from the Juvenile Court in Maricopa County
No. JD534301
The Honorable Ashley V. Halvorson, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Scottsdale
By Denise L. Carroll
*Counsel for Appellant/Father*

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant/Mother*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

David W. Bell Attorney at Law, Mesa
By David W. Bell
*Counsel for Children*

Maricopa County Office of the Legal Advocate
By Tiffany Mastin
*Guardian Ad Litem*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

---

**F U R U Y A**, Judge:

¶1        Jose V. ("Father") and Gabriella P. ("Mother") appeal from the juvenile court's order finding their minor children S.V., I.V., and E.V. dependent as to them. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Mother and Father are the biological parents of three children, S.V., born in January 2020, and twins E.V. and I.V., born in June 2021. The twins were born prematurely and remained in the intensive care unit for a couple of weeks. After the twins were discharged, the parents had concerns about bruising that appeared on the twins' bodies and faces, which they addressed with the children's pediatrician.

¶3        In September 2021, I.V. was taken to Phoenix Children's Hospital ("PCH") because she seemed "unresponsive" and "limp." Upon examination, she was found to have intracranial bleeding and multiple rib and hand fractures. The Department of Child Safety ("DCS") and law enforcement began an investigation into I.V.'s injuries. DCS also requested that S.V. and E.V. be examined for injuries. After the additional investigations, E.V. was also found to have multiple fractures while S.V. had no injuries. As part of the criminal investigation, the parents were prohibited from contacting the children and accessing their medical records. Ultimately, however, no criminal charges were filed.

¶4        Later that month, DCS filed a dependency petition alleging Mother and Father abused or failed to protect their children from abuse.

The juvenile court then assigned counsel and a guardian ad litem ("GAL") for the children.

**¶5**        The trial took place over twenty-one nonconsecutive days between June and December 2022. During trial, the juvenile court heard testimony from medical providers and experts regarding the injuries and examinations of the twins.

**¶6**        The juvenile court adjudicated the children dependent. Mother and Father timely appealed from the dependency order. While their appeal was pending, the court dismissed the dependency at DCS's request. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 8-235, 12-120.21, and 12-2101(A)(1).

## DISCUSSION

### I.     Parents' Appeal Remains Reviewable Under the Collateral Consequences Exception to Mootness.

**¶7**        As a matter of judicial restraint, "we will dismiss an appeal as moot when our action as a reviewing court will have no effect on the parties." *Cardoso v. Soldo*, 230 Ariz. 614, 617 ¶ 5 (App. 2012). However, we may "review an otherwise moot order if the consequences of that order will continue to affect a party." *Id.* ¶ 9.

**¶8**        Here, the parents filed their appellate briefs more than two months after the juvenile court dismissed the dependency. However, we decline to find the parents' appeal moot based on the collateral consequences exception. *See id.*; *see also* A.R.S. § 8-804(A); *Phillip B. v. Dep't of Child Safety*, 253 Ariz. 295, 296 ¶ 1 (App. 2022) (explaining that DCS maintains a central registry of substantiated reports of child abuse and neglect, which can disqualify individuals from obtaining or maintaining licenses, certifications, or employment in working with children and other vulnerable individuals). We, therefore, consider the merits of the parents' arguments.

### II.    Sufficient Evidence Supports Dependency.

**¶9**        Mother and Father both claim insufficient evidence supported the dependency finding. "We review an order adjudicating a child dependent for an abuse of discretion, deferring to the juvenile court's ability to weigh and analyze the evidence." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50 ¶ 13 (App. 2016).

¶10        Dependency must be established by a preponderance of the evidence. A.R.S. § 8-844(C)(1). "Dependent child" includes a child "who has no parent or guardian willing to exercise or capable of exercising [proper and effective parental] care and control." A.R.S. § 8-201(15)(a)(i). The juvenile court must consider "the circumstances existing at the time of the adjudication hearing" and not just past circumstances. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 300 ¶ 35 (App. 2020) (citation omitted). Denial of responsibility for past abuse and neglect may support a finding that "children do not have parents presently willing to or capable of exercising proper and effective parental care and control." *Shella H.*, 239 Ariz. at 51 ¶ 16 (quoting *Pima Cnty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 605 (App. 1990)).

¶11        Here, reasonable evidence supports the court's finding of dependency. Medical providers and expert witnesses testified at trial regarding the injuries and examinations of the twins. Jasmine Knoll, a clinical geneticist at PCH, who conducted the court-ordered genetic testing of the children for Ehlers-Danlos syndrome ("EDS"), testified the results "did not show any variance consistent" with EDS. Dr. Knoll also examined the children for osteogenesis imperfecta ("OI"). However, she found no features consistent with OI. Ultimately, Dr. Knoll concluded that no genetic factors explained the children's specific injuries.

¶12        Julie Baumgarth, a pediatric nurse practitioner at PCH who treated I.V. during her initial hospitalization, testified I.V.'s injuries were not consistent with either EDS or OI. Pamela Smith, a pediatric endocrinologist at PCH who examined E.V., concluded E.V.'s rib fractures were most likely not caused by an inherited bone disorder.

¶13        A DCS specialist Karen Chingofor testified DCS pursued dependency because the children's injuries were deemed nonaccidental and the parents had not been able to identify the cause. She also testified that although S.V. had not suffered an injury, he was at risk for similar abuse in the parents' care because he is vulnerable and relies on his adult caregivers to ensure his safety.

¶14        In response, the parents argue that testimony from their expert witness, geneticist Gerard Pals, Ph.D., provided an alternative cause of the twins' injuries. Dr. Pals, who is not a medical doctor, did not treat the children, but only reviewed records that were provided to him. On that basis, he testified the twins could have suffered from meningitis, ruptured subarachnoid cysts, and aneurysms. He also testified regarding his belief that the twins had a rare variation of OI known as Cole-Carpenter

syndrome. Ultimately, he testified the twins suffered from brittle bones resulting from a combination of OI, EDS, maternal obesity, and preterm birth. But resolution of conflicting evidence, even in the face of sharply disputed facts, is the unique province of the juvenile court. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 18 (2018) (internal citations omitted). We do not reweigh evidence on appeal, *id.*, and "will only disturb a dependency adjudication if no reasonable evidence supports it." *Shella H.*, 239 Ariz. at 50 ¶ 13.

**¶15**       Based on the trial evidence, the juvenile court "found [that] the PCH witnesses and records to be competent, compelling, and credible," and that the witnesses relied on their examinations and testimony about the children. By contrast, the court gave "less weight to Dr. Pals' testimony . . . given he lacks medical expertise, [and] did not examine the children." Even considering Father's argument that the court made seemingly incongruous findings such as describing parents' participation in services as "exemplary," the court concluded that although the parents made some progress by participating in DCS services, "there are ongoing substantiated and unresolved threats to the children." We disagree that the court's findings are incompatible and unreasonable. Therefore, because reasonable evidence supports the court's finding of dependency, it did not abuse its discretion.

### III.    Father's Due Process Arguments Fail.

**¶16**       Father argues DCS denied him due process and a fair trial by preventing the parents from preparing their defense. We review constitutional issues, such as violation of due process, de novo. *Tracy D. v. Dep't of Child Safety*, 252 Ariz. 425, 433 ¶ 31 (App. 2021).

**¶17**       When the state acts to terminate a parent's rights, it must provide that parent with due process. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579 ¶ 8 (2021). "Due process is not a technical conception with a fixed content unrelated to time, place and circumstances." *Royce C. v. Dep't of Child Safety*, 252 Ariz. 129, 136 ¶ 21 (App. 2021) (cleaned up). Instead, review of a due process challenge requires that we "discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Id.* (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 25 (1981)). "To determine whether a parent received a fundamentally fair proceeding, we consider and balance the parent's affected interest, the risk of erroneous deprivation of the parent's

interest, and the state's interest [in protecting the children]." *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 90 ¶ 25 (2019).

**¶18** A parent's right to custody and control of her own child, while fundamental, is not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97 ¶ 7 (App. 2016). It must be balanced against the state's interests in the juvenile dependency context. Those interests include, first and foremost, the state's interest in the children's well-being and best interests—including the children's health, stability, safety, security, a normal family home, and the prompt finality that protects those interests—accurate and just decisions, and a pecuniary interest in judicial efficiency. *See Royce C.*, 252 Ariz. at 137 ¶ 22.

**¶19** Here, Father raises three issues that he characterizes as due process violations. First, Father argues DCS should have conducted more comprehensive genetic testing to explain the cause of the twins' injuries as suggested by Dr. Pals. But given the transitory nature of a dependency and the delay that further testing would require, Father fails to adequately explain how compelling additional genetic testing outweighs the state's interests in an efficient judicial resolution to the dependency, or promote the children's best interests through stability, safety, and prompt finality. Moreover, medical professionals who treated the children concluded further genetic testing was unwarranted because the proposed rare conditions suggested by Dr. Pals would not account for the children's injuries. The record supports the court's determination that additional testing recommended by Dr. Pals was not necessary. On this record, the balance of these interests does not offend fundamental fairness sufficient to constitute a violation of Father's right to due process, and his argument to the contrary in that regard is unavailing.

**¶20** Second, Father claims the "parents were prohibited from talking to the doctors about the children's conditions" and "were not allowed to get second opinions . . . that could explain the injuries." This position depends upon a misleading characterization of the record. More accurately, the parents were only prohibited from speaking with the medical providers in the initial days of the dependency because of the criminal investigation. The court ordered the return of the children to the parents in March 2023 to stay under their parents' care. And later in the proceedings, the parents were allowed to attend medical appointments, and did communicate with medical providers. The parents had ample opportunity to investigate the cause of the twins' injuries and they have failed to show how the initial prohibition substantially impaired the

fundamental fairness of these proceedings, given the competing interests at stake. We discern no due process violation.

**¶21**  Third, Father argues the juvenile court erred in granting DCS's motion in limine, precluding Dr. Pals from testifying about new diagnoses or opinions that had not been previously disclosed. This issue does not raise a true due process concern, but rather constitutes a challenge to the court's evidentiary ruling. "We review a trial court's ruling to admit expert testimony for an abuse of discretion." *State v. Favela*, 234 Ariz. 433, 434 ¶ 4 (App. 2014).

**¶22**  Here, Mother provided late disclosure statements in which she stated that she and Father intended to solicit expert testimony from Dr. Pals about new diagnoses and opinions concerning the children. DCS moved in limine to exclude such testimony as untimely disclosed. The juvenile court partly granted the motion. Because the proposed new diagnoses and opinions were disclosed "later than 30 days prior to the contested adjudication," the court did not abuse its discretion in limiting Dr. Pals' testimony as to those late-disclosed topics. Ariz. R.P. Juv. Ct. 315(d)(1), (g) (explaining the court may preclude evidence that was not timely disclosed).

## IV. The Court Did Not Err by Allowing the GAL to Participate in Trial.

**¶23**  Mother argues the juvenile court erred in allowing the GAL to participate in trial contrary to A.R.S. § 8-221(F). She claims the GAL "acted as if she were a separate and independent attorney for the [c]hildren" and exceeded her statutory authority. DCS argues Mother waived this argument by failing to raise it during trial proceedings. DCS alternatively argues amendments to the Rules went into effect during the dependency proceedings that permitted the GAL's involvement at trial.

**¶24**  During trial, Mother objected to the GAL's participation in the proceeding, claiming the GAL is not a party to the dependency under Rule 302(b) and lacks standing. Although the juvenile court invited Mother to file a motion to state the basis of her claim, she did not do so. Because Mother did not raise this argument to the court, she has waived it on appeal. *In re MH 2008-002393*, 223 Ariz. 240, 243 ¶ 15. Regardless, the court did not err in allowing the GAL to participate in the trial.

**¶25**  In cases of alleged abuse or neglect, the juvenile court may appoint a GAL, who must be an attorney. A.R.S. § 8-221(F). True, as Mother points out, the statute specifies that the GAL is not the child's attorney. *Id.* But this proviso merely highlights why the two roles are distinct and

participation of both is permissible and desirable in dependency proceedings. While the child's attorney "must maintain a normal attorney-client relationship with the child" and follow "the child's need and wishes," "[t]he child's GAL must assist the court in determining what is in the child's best interests and is not bound by the child's expressed preferences." Ariz. R.P. Juv. Ct. 306(a)(1)(A). Further, the GAL "must participate in discovery, file pleadings, and subpoena witnesses." *Id.* Because Rule 306(c) authorizes the GAL to participate in the proceedings and develop a position for each hearing, the court did not err in allowing the GAL to participate in the trial.

**CONCLUSION**

¶26        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA