NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE DEPENDENCY AS TO R.G.

No. 1 CA-JV 22-0259
FILED 3-16-2023

---

Appeal from the Superior Court in Maricopa County
No. JD37110
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

Roland Arroyo, Attorney at Law, Waddell
By Roland Arroyo
*Co-counsel for Appellee R.G.*

Maricopa County Office of the Legal Advocate, Phoenix
By Therese Ann Gantz
*Co-counsel for Appellee R.G.*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

_____

**C A T L E T T**, Judge:

¶1         Annjanet G. ("Mother") appeals the juvenile court's dependency finding as to R.G. ("Child"), arguing there was insufficient evidence of neglect at the time of the dependency hearing. Because reasonable evidence supports the court's decision, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2         Before Child was born, Mother had five other children who were previously adjudicated as dependent. One of the concerns the Department of Child Services ("DCS") had when making its determination for the five other children was the uncleanliness of Mother's home. In February 2022, police visited Mother's residence and determined it was unsafe for children. Because of the poor living conditions, the police submitted a report to DCS.

¶3         Mother's grandmother also lived in the residence. DCS identified the grandmother as an individual of concern because of her treatment of Mother's children. Two of Mother's children reported to DCS that the grandmother abused them. Additionally, during an interaction with DCS, the grandmother told one of the children, "[b]ad children go to foster homes and get killed and raped." While Mother stated she did not agree with her grandmother's comments and would keep Child away, Mother also admitted to believing her grandmother was capable of safely caring for her children.

¶4         Because of the prior dependency findings, DCS provided services for Mother. As part of those services, Mother was diagnosed with depression, anxiety, an unspecified neurocognitive disorder and in 2019 reported having suicidal ideation. Mother agreed her depression and anxiety impacted her ability to clean her home and keep it safe for her children.

¶5         In June 2022, after Child was born, DCS visited Mother. At the time, Mother was living at her father's home with her grandmother.

DCS observed that the room where Mother and Child were located was in disarray. The room had so much clutter on the floor that DCS could not enter. DCS also became concerned when Mother placed Child on two twin beds that were pushed together, and "half of it was filled with clothes and other items." In its post-visit report, DCS noted the "two beds could separate causing [Child] to fall through or that the pile of clothes/objects could harm [Child]." After determining neglect, DCS returned and removed Child.

¶6 Mother claimed she later moved out of her father's home, on her own, to a new apartment. She did not notify DCS of her move, which prevented DCS from confirming whether the new location was safe.

¶7 In July 2022, DCS recommended Mother participate in specialized counseling. While it is unclear how many counseling sessions DCS expected Mother to attend, she missed sessions due to transportation issues. But when Mother finally notified DCS that she was having those issues, DCS provided access to transportation.

¶8 At Child's dependency hearing in October 2022, Mother repeatedly refused to take accountability for her prior actions. She testified her other children caused the conditions in the home in February and she was not responsible. She denied ever neglecting her children and blamed them for their removal. She blamed DCS for her depression and anxiety.

¶9 Mother provided conflicting testimony regarding whether counseling was beneficial. While she testified counseling could be helpful and taught her "different strategies . . . to cope," she also testified counseling was not needed and would not be beneficial.

¶10 DCS expressed concern about Mother's inability to accept accountability and disregard of the services provided. Mother's failure to make "appropriate behavioral changes" led DCS to conclude she could not provide proper care for Child.

¶11 The juvenile court found Child dependent because of a "history of inappropriate housing . . . inability [of Mother] to care for her other older children . . . [and] not fully engag[ing] in the services offered to her for her other children." Mother timely appealed. We have jurisdiction under A.R.S. § 8-235.

## DISCUSSION

¶12 Mother argues the juvenile court erred in finding Child dependent because there was not reasonable evidence of neglect at the time of the hearing. We review a court's dependency finding for abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488 ¶ 12 (App. 2015). Dependency must be proven by a preponderance of the evidence. *See* A.R.S. § 8-844(C)(1). The court must make its dependency finding "based upon the circumstances existing at the time of the adjudication hearing." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50 ¶ 12 (App. 2016). We review the evidence in the light most favorable to sustaining the court's finding and affirm unless there is no reasonable evidence to support the finding. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235 ¶ 21 (App. 2005).

¶13 A child may be found dependent if the "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(15)(a)(iii). The definition for neglect includes "[t]he inability or unwillingness of a parent, guardian or custodian of a child to provide that child with . . . shelter . . . if that inability or unwillingness causes substantial risk of harm to the child's health or welfare . . . ." A.R.S. § 8-201(25)(a).

¶14 The juvenile court did not abuse its discretion by finding that Mother was unable or unwilling to provide appropriate shelter, thereby creating a substantial risk of harm to Child. The juvenile court previously found Mother's older children dependent based in part on unsanitary living conditions—the home had food and trash covering the floor, stains and mold on the walls, "mushy" carpets, and cockroaches. At the time of Child's birth, Mother had moved and lived with her father, which Mother testified she did to fix her prior housing situation. But DCS documented the room where Mother kept Child raised similar concerns to Mother's prior housing situation. Not only could DCS not enter the room due to clutter, but the bed where Mother placed Child presented a hazard because of the potential to separate and the presence of clothes and other items.

¶15 Mother also admitted that the grandmother resided in the home when DCS removed Child, and Mother minimized the risk grandmother poses. DCS previously identified the grandmother as someone unsafe to be around children. Two of Mother's older children reported that the grandmother abused them. Within earshot of DCS, the grandmother told one of the children, "[b]ad children go to foster homes and get killed and raped." The grandmother threatened one of Child's

older siblings with abuse and having food withheld if he spoke to DCS. Another of Child's older siblings—a three-year-old child—was visibly afraid of the grandmother and would cry when the grandmother spoke to him. Despite all of this, Mother testified she believes the grandmother is a safe and appropriate person to care for children.

¶16 Finally, at the dependency hearing, Mother denied responsibility for her prior actions. She blamed her older children for the unsanitary conditions that caused, in part, their dependency findings. She blamed DCS for causing her mental health issues and provided conflicting statements regarding whether counseling was beneficial.

¶17 We are thus faced with a situation where the juvenile court found Mother's five older children dependent based on unsanitary living conditions and abusive relatives. Mother was subsequently diagnosed with depression, anxiety, and an unspecified neurocognitive disorder. DCS, therefore, recommended specialized counseling. But Mother failed to engage in the services DCS recommended to help Mother address any underlying mental health issues. Although Mother later moved in with her father, Mother failed to provide Child with safe shelter and, most disconcertingly, exposed Child to the grandmother. And Mother denies any responsibility for past abuse and neglect of Child's older siblings and blames DCS for her mental health diagnoses.

¶18 In challenging the juvenile court's dependency finding, Mother relies upon her testimony that she had moved into an apartment of her own and obtained employment. But Mother did not inform DCS she moved into her own apartment before the hearing, which prevented DCS from determining whether the new apartment was safe for Child.

¶19 As we have previously explained, where conditions creating dependency as to older children continue to pose an imminent risk of harm to a newborn, DCS is permitted to act to protect the newborn before infliction of specific harm. *Pima Cnty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604 (App. 1990); *see also Shella H.*, 239 Ariz. at 51 ¶ 16. We also will "not hesitate" to affirm dependency when a parent denies responsibility for past abuse and neglect because "such denial of responsibility supports a finding" that the parent is not "presently willing to or capable of exercising proper and effective parental care and control." *96290*, 162 Ariz. at 604. Both those situations are present here. We conclude, therefore, that the trial court did not abuse its discretion in finding Child dependent as to Mother.

## CONCLUSION

¶20 We affirm the juvenile court's dependency finding.



AMY M. WOOD • Clerk of the Court
FILED: AA