NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.P. and H.Z.

No. 1 CA-JV 25-0049

FILED 01-22-2026

Appeal from the Superior Court in Maricopa County
No. JD534970
The Honorable Jay M. Polk, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ingeet Pandya
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Brian Y. Furuya joined.

**P A T O N**, Judge:

**¶1**        Vanita M. ("Mother") appeals the juvenile court's order terminating her parental rights to two of her children.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        We view the facts in the light most favorable to upholding the juvenile court's termination order.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

**¶3**        Mother has four children, two of whom are parties to this appeal: H.Z., born in April 2016, and E.P., born in March 2022.  Mother has a long history of substance abuse spanning nearly two decades.  She used fentanyl while pregnant with E.P., and E.P. was born exhibiting withdrawal symptoms from substance exposure.

**¶4**        H.Z. and E.P. came into the Department of Child Safety's ("DCS") care after Mother was hospitalized for overdosing on fentanyl in August 2022.  That same month, DCS filed a dependency petition, alleging the children were dependent as to Mother due to her substance abuse.  DCS placed H.Z. and E.P. in temporary custody with two adults who had an established relationship with the children prior to the case.  H.Z. was later moved from her initial placement to the care of Mother's ex-boyfriend, whom H.Z. has known since she was one year old, and who has served as her "psychological" father.

**¶5**        The juvenile court found H.Z. and E.P. dependent as to Mother in February 2023.  In April 2024, DCS petitioned to terminate Mother's parental rights as to H.Z. and E.P. based on chronic substance abuse and fifteen month out-of-home placement grounds.  DCS petitioned to terminate Jeremy P.'s (E.P.'s father) and Brian Z.'s (H.Z.'s father) parental rights as well.[1]

**¶6**        At the five-day termination trial in December 2024 and February 2025, Mother testified about her nearly twenty-year substance

---

[1] Although Brian Z.'s parental rights to H.Z. were terminated, he is not a party to this appeal.  Jeremy P.'s rights were not terminated — he had a pending termination petition at the time of this hearing that had been continued after the court determined he was making good progress towards reunification after his release from incarceration; he is not a party to this appeal.

abuse history. She made excuses regarding her substance abuse issues throughout most of the dependency period.

¶7 The evidence showed that Mother joined a sober living treatment program in July 2024 but was discharged less than a month later, after being hospitalized and deemed beyond their care level. She was hospitalized again a month later due to a suspected overdose and admitted to using methamphetamine. Mother then entered four different treatment programs, completed none of them, and was asked to leave several programs due to noncompliance or behavioral issues. Additionally, between August 2022 and October 2024, Mother failed to appear for a considerable number of drug tests. Of the tests she participated in, many yielded positive results for controlled substances, and several were problematic samples based on Mother's suspected tampering with them, including an occasion where Mother was found with a testing device.

¶8 Mother claimed her sobriety began in July 2024, but she was hospitalized for a suspected overdose in August 2024, and she declined to test until October 2024. DCS acknowledged at trial and in its answering brief, and the court noted in its order, that Mother has become sober, but the court found her sobriety likely only began in September or October 2024 because when she resumed testing in October her tests were negative. When visiting her children, Mother failed to adequately supervise E.P. and others had to intervene to prevent E.P. from putting objects in her mouth. H.Z. reportedly expressed "sadness" and "anxiety" after visiting with Mother.

¶9 The juvenile court determined DCS established substance abuse and fifteen months' out-of-home placement grounds by clear and convincing evidence, and that termination was in the children's best interests by a preponderance of the evidence. The court thus terminated her parental rights as to H.Z. and E.P. in March 2025.

¶10 Mother timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶11 Mother argues (1) the juvenile court failed to make sufficient findings about Mother's inability to discharge parental responsibilities under the substance abuse ground, (2) insufficient evidence supported the court's finding that Mother's chronic substance abuse was likely to continue

for a prolonged and indeterminate period of time, and (3) the court erred in finding termination was in H.Z. and E.P.'s best interests.

**¶12** To terminate a parent-child relationship, the juvenile court must find (1) by clear and convincing evidence that at least one statutory ground for termination exists and (2) by a preponderance of the evidence that the termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018); *see also* A.R.S. § 8-533(B) (listing grounds for termination). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We will therefore affirm the juvenile court's factual findings if supported by reasonable evidence. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93-94, ¶ 4 (App. 2009).

## I. The juvenile court made factual findings about Mother's inability to discharge her parental responsibilities in its termination order.

**¶13** Mother first contends the juvenile court failed to make any specific findings about Mother's inability to discharge her parental responsibilities in its termination order. She argues the court merely concluded that "[a] parent who abuses illegal substances generally cannot meet the rigors of day-to-day parenting," without connecting that conclusion to her circumstances.

**¶14** DCS responds that Mother's argument is waived because Mother failed to file a motion under Arizona Rule of Procedure for the Juvenile Court ("Rule") 317 to alter or amend the order based on insufficient findings, and that even if not waived, the court's findings were sufficient. We disagree with DCS that Mother waived this argument by failing to file a Rule 317 motion to alter or amend the final order. *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 297-98, ¶¶ 18-19, 24 (App. 2020) (explaining that the juvenile rules do not require a parent to take affirmative steps to ensure the court follows the law before obtaining appellate review); A.R.S. § 8-538(A); Ariz. R.P. Juv. Ct. 353(h)(2)(A).

**¶15** "[T]he legislature has imposed significant procedural safeguards to ensure due process" in termination cases because of parents' fundamental interest in their children. *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538, ¶ 16 (App. 2018) (citation omitted). Section 8-538(A) requires "[e]very order of the court terminating the parent-child relationship . . . shall be in writing and shall recite the findings on which the order is based." A.R.S. § 8-538(A). But the court is not required to include every fact it relied

upon in making its determination; instead, it must state the "ultimate facts," which are those necessary to resolve the disputes. *Logan B.*, 244 Ariz. at 537, ¶ 15 (citation omitted).

**¶16**      The juvenile court made factual findings to support its conclusion that the evidence "clearly and convincingly shows that [Mother's] pervasive and continual use of substances . . . renders her unable to discharge her parental responsibilities to [the children]." The court discussed Mother's 2023 and 2024 psychological evaluations, in which the evaluators observed that her illicit substance abuse continued, and she would not be able to protect, provide for, and meet the needs of her two young children, ages three and eight. The court noted that even as recently as December 31, 2024, the evaluator opined that Mother's "long history of substance abuse" continues to "be a barrier to her providing and meeting [the children's] needs." The juvenile court's order thus included factual findings as to this factor.

## II. Sufficient evidence supports the juvenile court's finding that there were reasonable grounds to believe that Mother's chronic substance abuse would continue for a prolonged and indeterminate period.

**¶17**      Mother next argues the juvenile court abused its discretion in finding Mother's substance abuse issue was likely to continue for a prolonged and indeterminate period. We accept the juvenile court's factual findings if supported by reasonable evidence because it is in the best position to weigh conflicting evidence. *Oscar O.*, 209 Ariz. at 334, ¶ 4; *Denise R.*, 221 Ariz. at 93-94, ¶ 4.

**¶18**      To terminate parental rights on chronic substance abuse grounds, the juvenile court must find that (1) the parent has a history of chronic substance abuse, (2) the parent is unable to discharge his parental duties because of the substance abuse, (3) DCS "made reasonable efforts to reunify the family or that such efforts would have been futile[,]" and (4) there are reasonable grounds to believe the substance abuse will continue for a prolonged, indeterminate period. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005); A.R.S. § 8-533(B)(3). Mother only challenges the court's findings as to the last element, so we do not address the others. A "temporary abstinence from drugs and alcohol" does not necessarily "outweigh [a] significant history of abuse or [a] consistent inability to abstain" during a termination case. *Raymond F. v. Ariz. Dep't. of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29. The court evaluates the circumstances at

the time of the termination hearing. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

**¶19** In its termination order, the juvenile court noted Mother's lengthy substance abuse history, including her multiple drug-related arrests, repeated overdoses, drug use during pregnancy, giving birth to substance-exposed newborns, and numerous unsuccessful rehabilitation attempts. Mother tested positive for methamphetamine on multiple occasions during both the dependency and termination proceedings and failed to comply with court-ordered drug testing requirements for most of these proceedings.

**¶20** At the time of the termination hearing in December 2024, Mother had recently completed a psychological evaluation that found she had a longstanding substance abuse history which was likely to persist. The evaluation noted that she minimized the severity of her substance abuse, lacked insight into its impact on her children, and inconsistently engaged with services. Mother's minimization was supported by her trial testimony that her sobriety began in July 2024, the only time she used drugs after that date was on the day she overdosed in August 2024, and her positive tests between August 2022 and May 2023 were all false positives. She provided several excuses for not drug testing, admitted to not testing during the period of her alleged sobriety—July 2024 through October 2024—and minimized her positive tests.

**¶21** Mother argues that her participation in multiple rehabilitation programs and six months of sobriety at the time of trial should outweigh her past behavior, but we do not reweigh the evidence on appeal. *See Alma S.*, 245 Ariz. at 151, ¶ 18. And while Mother's efforts beginning two months before the start of the termination trial are laudable, her temporary abstinence did not necessarily outweigh her significant history of abuse and her consistent inability to abstain throughout the rest of the dependency period. *See Raymond F.*, 224 Ariz. at 379, ¶ 29. The record contains sufficient evidence to support the juvenile court's finding that Mother's chronic substance abuse was likely to continue for a prolonged, indeterminate period.

**¶22** Because only one statutory ground is required to support termination of a parent-child relationship, we need not address Mother's arguments regarding the fifteen-month out-of-home placement ground. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 5 (App. 2017).

### III. Sufficient evidence supports the court's finding that termination of Mother's parental rights was in E.P.'s and H.Z.'s best interests.

**¶23** Mother also argues the juvenile court erred in finding termination was in the children's best interests. Mother argues that alternatives to terminating her parental rights to H.Z. existed, such as guardianship or additional time for reunification. Mother further argues the court erred in finding E.P. was adoptable because Jeremy P.'s parental rights were subject to a pending termination motion, rendering E.P.'s legal adoptability merely speculative.

**¶24** After finding statutory grounds for termination, the court must also determine that termination is in the best interests of the child by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court must balance the unfit parent's "interest in the care and custody of his or her child" against "the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35.

**¶25** "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (collecting cases). The "child's interest in stability and security" must be the court's primary concern. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016) (citing cases). In making its determination, the court must consider the totality of the circumstances, including whether the current placement is meeting the child's needs, the child's adoptability, and the parent's efforts towards rehabilitation. *See Alma S.*, 245 Ariz. at 148, ¶ 1; *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98-99, ¶¶ 10-12 (App. 2016). We view the record in the light most favorable to upholding the best interests finding, and we affirm findings of fact "if reasonable evidence and inferences support them." *See Demetrius L.*, 239 Ariz. at 2-3, ¶¶ 2, 9.

**¶26** As to H.Z., the DCS case manager testified that H.Z.'s current placement, her "psychological" father, was meeting all of her needs, providing sibling contact, and is willing to adopt her. DCS reported H.Z. had expressed emotional distress during visits with Mother. She reportedly described feeling "sad emojis in her head" when interacting with Mother and "happy [emojis]" when returning home.

¶27         The court found that "[H.Z. and E.P.] would benefit from termination of the parental child-relationship because they need a safe, stable home, free of substance abuse, and someone who is able to ensure their needs are met. For the same reason, it would be a detriment to deny termination of the parent-child relationship between . . . [Mother and the children]." It also found that both children "are adoptable because their respective current placements are willing to adopt them. In addition, [H.Z.'s and E.P.'s] current respective placements are the least restrictive environments required to meet [their] needs." Although Mother argues that alternatives such as guardianship or additional time for reunification could have addressed the lack of a safe, stable home for H.Z., the question before the juvenile court was whether termination was in the children's best interests. Sufficient evidence supports the court's best interests findings as to H.Z.

¶28         As to E.P., Mother argues, without citing any legal authority, that terminating her parental rights to E.P. was not in E.P.'s best interest because Jeremy P.'s parental rights were intact and thus, E.P. could not be adopted. But the juvenile court's best interests determination was not based solely on E.P.'s potential adoptability. The court also considered how E.P. would benefit from termination, focusing on E.P.'s interest in stability and security, noting that E.P.'s father credibly testified to her bond with, and the great care taken of her by, her current placement and noting her placement is meeting her needs. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350 (App. 2013) (in determining whether a child would benefit from termination, one relevant factor is "whether the current placement is meeting the child's needs"); *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. at 5; *Kent K.*, 210 Ariz. at 286, ¶ 35.

¶29         The court determined Mother's chronic substance abuse negatively affected her ability to appropriately supervise and care for E.P. The evidence showed that Mother often failed to monitor E.P. adequately, requiring others to intervene to prevent the child from putting objects in her mouth, for instance. The court noted that Mother's lack of supervision placed E.P. at risk, noting the child was too young to protect herself from harm. The record shows that after considering the totality of the circumstances, the court determined E.P. would benefit from a safe and stable home free from Mother's ongoing substance abuse. It therefore did

not abuse its discretion in finding termination of Mother's parental rights was in E.P.'s best interests.  *See Alma S.*, 245 Ariz. at 148, ¶ 1.[2]

## CONCLUSION

**¶30**　　　　We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:　　　　JR

---

[2] In December 2025, Mother filed a motion to supplement the record and a motion for procedural order, arguing this case presents an extraordinary circumstance because E.P. has since been reunited with Jeremy P., a fact unavailable at the time of briefing.  Arizona Rule of Civil Appellate Procedure ("ARCAP") 11(g) permits correction or modification of the record only in limited circumstances, including when "anything material to either party is omitted from or misstated in the record by error or accident." Here, however, the information does not meet the rule criteria above.  And the motion does not specifically explain how this development relates to the best-interest determination.  Even if it did, we would reach the same conclusion.  The juvenile court's best interests finding did not rest solely on adoptability, and E.P.'s reunification with her father does not alter the analysis applied at the time of termination.  Because this information does not affect our decision, it is not material under ARCAP 11(g), and we therefore deny the motion.